In the Matter of WILLIAM N. MAIRS, JR. (Admitted as WILLIAM NORTON MAIRS, JR.), an Attorney, Petitioner. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Respondent.

First Department, June 7, 1984

**APPEARANCES OF COUNSEL**

*Paul A. Weiss* of counsel (*Nath & Weiss,* attorneys), for petitioner.

*Alan S. Phillips* of counsel (*Michael A. Gentile,* attorney), for Departmental Disciplinary Committee for the First Judicial Department.

**OPINION OF THE COURT**

*Per Curiam.*

This is a motion for reargument of our recent order denying a second application for reinstatement to practice law.

We agree with the dissent that petitioner is not entitled to be reinstated without a further showing. The issue is whether he is entitled to a hearing to demonstrate his entitlement to reinstatement.

Petitioner, 55 years old, was admitted to practice in this department in 1955. In 1968, he was disbarred after a complaint that he had converted a considerable sum of money constituting the legacy of the estate of his wife's aunt, which he had represented. Petitioner had voluntarily offered his resignation in the face of this charge. In 1969, after his disbarment, he was indicted for grand larceny, first degree, in connection with this conversion of funds, and in 1971, he was convicted of the class A misdemeanor of petit larceny on the basis of a negotiated plea. He was sentenced to three years probation with a condition of continued restitution. He was discharged from probation in November, 1974.

Since his disbarment he has worked as an editor for West Publishing Co., operated a hobby supply shop, worked as a salesman, and since 1977 has been employed in the Nassau County Labor Department, since May, 1979 as assistant to the Director of Labor Relations. His prior difficulties precluded him from obtaining employment as an insurance agent or as a commodity futures dealer. Petitioner has been active in local civic, service, charitable, religious and political organizations. In 1977, he was licensed as a real estate sales person and commissioned as a notary public.

Petitioner initially applied for reinstatement in 1980. His application was supported in part by affirmations and affidavits of four attorneys, including a retired Justice of the Appellate Division, Second Department, attesting to his upstanding life over the preceding several years, his good standing in the community, his stable family life, abstention from alcohol since at least 1973 and his diligence, integrity, loyalty and commitment to responsibility in the employ of the Nassau County government. His application at that time was opposed by the Departmental Disciplinary Committee in part on the ground that petitioner had failed to make sufficient restitution. We denied the application at that time without granting an evidentiary hearing to explore the question (79 AD2d 550).

Late last year a second application was made for reinstatement. The Committee this time took no position on the application. One reason was assertedly because of an insufficient showing that petitioner currently possessed the requisite character and fitness to resume practice of law. The Committee was also concerned that petitioner had as yet failed to complete restitution. It expressed a desire to have further data on the issue of petitioner's claim to alcoholism during the period in which the client's funds were converted. The Committee recommended further investigation and hearings to explore these issues.

On February 2, 1984, declining the invitation for further investigation and hearings, we denied this second application for reinstatement, again without opinion (99 AD2d 692). Petitioner now moves for reargument or renewal, or at least for an explanation for our denial of a hearing, to which the Committee had previously been amenable. In the alternative, petitioner asks for leave to appeal to the Court of Appeals. This time, the Departmental Disciplinary Committee flatly opposes the motion on purely procedural grounds.

On the question of character and fitness, petitioner has presented an impressive array of affidavits attesting to his rehabilitation and present good character, including affidavits from the former and present Nassau County labor commissioners and a United States Senator. Petitioner asks for a hearing to demonstrate his character and fitness to resume practice of law.

The question of restitution is crucial on any application for reinstatement where there has been a conversion of funds. Petitioner asserted that he has made restitution of approximately $32,000, but was having difficulty, after all these years, locating and negotiating with a responsible representative in Ireland who would accept a final settlement on behalf of the estate.

A review of the 1980 reinstatement application file reveals that the original conversion was between $40,000 and $50,000. Petitioner's initial repayment of $5,000 was apparently a major factor in his plea negotiations on the criminal charge. By 1974, he had made total restitution of about $12,000. No further payments were made up to the

time of the reinstatement application in 1980. He still owed in excess of $30,000. This court was unimpressed with petitioner's assertion then that he had received "forgiveness", not evidenced by any formal release, from his 97-year-old former client. In light of petitioner's failure to make any restitution during the six years preceding the 1980 application for reinstatement, we declined to afford petitioner an evidentiary hearing.

In the three and one-half years after his initial application, petitioner apparently paid another $20,000 in restitution. He has now deposited $10,300 in escrow with his attorney to be utilized to liquidate the obligation. Efforts to work this out by the petitioner and the attorney have proved unavailing. Communications with representatives of the estate in Ireland have met without clear resolution.

If the law and rules permit a reinstatement application, which we are required to entertain, then in most cases the applicant should be entitled to a hearing (22 NYCRR 603.14). This is certainly such a case, where the Disciplinary Committee itself originally saw the need for further investigation and hearings to determine the crucial questions of the extent of restitution and the possible influence of alcohol on the actions initially leading to disbarment. Nothing of substance changed, between the 1983 application and the instant reargument motion, to warrant a change of the Committee's position with respect thereto.

There is plainly a question of fact as to the extent of restitution and the efforts to conclude a disposition with respect thereto. The dissent clearly demonstrates there is such an issue. An evidentiary hearing is required to resolve the issue. Granting a hearing does not imply that reinstatement will follow, as the dissent suggests. Our obligation to conform to procedural safeguards in disciplinary proceedings is now beyond doubt (*Matter of Nuey,* 61 NY2d 513).

We must, to the extent possible, apply the rules and guidelines consistently. In *Matter of Levine* (100 AD2d 823), we held the application for reinstatement in abeyance and directed a hearing to determine whether the applicant now possessed the requisite character and fitness to practice law. The Disciplinary Committee favored fur-

ther investigation and a hearing on the application of Levine, who had also consented to disbarment. The differences between the two cases would seem to militate more strongly in favor of a further hearing in this case. Whereas petitioner herein was convicted of a class A misdemeanor of petit larceny as a result of his conversion of funds, Levine was disbarred after conviction for the Federal felony of bribing a public official (US Code, tit 18, § 201). Obviously, one who bribes a public official cannot make restitution. But, as we have held, he is entitled to a hearing on his application for reinstatement. One who has been disbarred as a consequence of the conversion of a client's funds, and who claims to have made or attempted to make restitution, is equally entitled to a hearing. It is noted that whereas petitioner was disbarred 16 years ago, Levine made his application for reinstatement little more than seven and one-half years after his disbarment.

Ours is not an arbitrary function. We cannot foreclose the possibility of reinstatement where disbarment has resulted from conversion of clients' funds. Our rules (22 NYCRR 603.11, 603.14[a]) applicable to attorneys whose disbarment is premised upon their resignation from the Bar, like section 90 (subd 5, par b) of the Judiciary Law, applicable to attorneys disbarred upon conviction for a felony, require that we entertain applications for reinstatement after seven years. As long as the rules permit reinstatement in such cases, then due process must afford a hearing in an appropriate case involving genuinely disputed factual issues. This is such a case.

Accordingly, reargument is granted, the application for reinstatement is held in abeyance, and the matter referred to the Departmental Disciplinary Committee for further investigation and recommendations on petitioner's efforts at restitution, on the possible influence of alcohol on the events leading to petitioner's disbarment in 1968, and as to his requisite character and fitness to practice law.

MURPHY, P. J. (dissenting). We in the dissent believe that the petitioner should not be reinstated unless he convincingly demonstrates that restitution has been effected.

Petitioner was disbarred in 1968 for converting approximately $44,000 from the estate of his wife's aunt, Jane Farrell. Petitioner asserts that he has repaid $32,000. He alleges that he is having difficulties in forcing certain heirs in Ireland to accept restitution. Based upon these representations, the majority directs a hearing on petitioner's efforts at restitution and the possible influence of alcohol with respect to the events leading to his disbarment 16 years ago. It is the position of the dissent that petitioner has not sustained the burden of proof or made a probative showing in his papers that would entitle him to such a hearing.

In an earlier motion, petitioner stated that there were only two surviving beneficiaries, Maria T. Farrell and Brenden Farrell. The former, then 97 years of age, allegedly resided in the Henry Hudson Hotel. The latter, who had cerebral palsy from birth, was confined to a Dublin hospital.

Upon the more recent motions, petitioner does not inform us whether those heirs are still alive. In a petition dated August 13, 1983, petitioner avers that he has now repaid $32,000. This represents an increase of $20,000 in repayment from 1980. However, neither petitioner nor his attorney indicates (i) which heir was paid and (ii) how much was paid. The petitioner's silence upon this point is inexplicable and unexcusable.

Upon this same point, there would appear to be a discrepancy in the record. In a letter dated April 21, 1983, petitioner's attorney informs one Alphonsus Farrell in Ireland that "one of your relations, a substantial heir, had forgiven $22,000". We may only speculate as to the identity of that unidentified heir; presumably, it was Maria T. Farrell, a woman almost 100 years old. An issue is thus presented as to whether petitioner actually repaid $20,000 to Maria T. Farrell in the 1980-1983 period or whether she simply forgave a debt in that amount. If Maria T. Farrell forgave the debt, then a collateral question is whether she did so with a full appreciation of the facts. The record does not contain any written release from any heir. Until this matter is clarified by appropriate affidavits and documen-

tation, no hearing is warranted upon petitioner's application for reinstatement.

Moreover, the record in this disciplinary proceeding shows that the petitioner has been less than diligent in making restitution. In 1974, petitioner received an inheritance in an undisclosed amount. His silence upon the amount of the inheritance permits the inference that it was sizeable. Instead of using his inheritance to make restitution, petitioner invested it in a business that soon became insolvent. During the 1974 to 1979 period, petitioner did not pay one dollar in restitution.

The record also contains an exchange of correspondence in 1982 between petitioner and Alphonsus Farrell over possible restitution and/or settlement. The record contains additional letters from petitioner's attorney to Alphonsus Farrell; these letters were apparently never answered. The letters from Alphonsus Farrell to the petitioner indicate that he and the other heirs in Ireland distrust the petitioner, as well they may. Those letters also show that the petitioner knows the identities of the other heirs in Ireland. It is the petitioner's responsibility to take both ordinary and, if necessary, extraordinary measures to effect restitution. The transmission of a handful of letters by petitioner and his attorney to Alphonsus Farrell can hardly be characterized as an exhaustive undertaking on their part.

It should be further stressed that petitioner is attempting to entangle this court in his repayment problems. The court should reject such involvement and only consider petitioner's application for reinstatement when he candidly makes an evidentiary showing of eligibility for consideration for reinstatement.

When and if the petitioner meets this burden, a hearing may then be ordered. At that time, questions relating to petitioner's restitution and his alcoholism may be considered by a panel of the Departmental Disciplinary Committee. In the instant papers, petitioner has not made a prima facie showing that would justify such a hearing.

The motion for reargument and for reinstatement should be denied.

KUPFERMAN, SANDLER and FEIN, JJ., concur; MURPHY, P. J., and ALEXANDER, J., dissent in an opinion by MURPHY, P. J.

Motion for reargument granted and upon reargument the matter is referred to the Departmental Disciplinary Committee for further investigation and recommendations as indicated in the order of this court, and petitioner's application for reinstatement as an attorney and counselor at law in the State of New York is held in abeyance pending receipt by this court of the report of respondent.