**CONAN PROPERTIES, INC., Plaintiff,**

v.

**MATTEL, INC., Defendant.**

**No. 84 Civ. 5799 (KTD).**

United States District Court,
S.D. New York.

Sept. 26, 1985.

Hopgood, Calimafde, Kalil Blaustein & Judlowe, New York City, for plaintiff; Stephen B. Judlowe, John L. DuPré, Thomas M. Saunders, of counsel.

Reavis & McGrath, New York City, for defendant; Welsh & Katz, Chicago, Ill., Ralph C. Dawson, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff, Conan Properties, Inc. ("CPI"), brings this action against defendant, Mattel, Inc. ("Mattel"), alleging, *inter alia,*

copyright infringement of its fictitious character CONAN THE BARBARIAN ("CONAN"). Defendant now moves for leave to amend its answer to file a counterclaim. Plaintiff opposes defendant's motion and cross-moves for leave to file a Third Amended Complaint. Plaintiff also requests reconsideration of that portion of Magistrate Dolinger's Memorandum and Order dated June 24, 1985 which disqualified Arthur M. Lieberman, Esq., from pretrial matters.

## DISCUSSION

**I. Defendant's Motion for Leave to Amend its Answer**

Defendant seeks to amend its answer to file counterclaims for fraudulent inducement and misrepresentation and alleged violations of certain sections of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* These counterclaims are asserted against CPI as well as six additional counterclaim defendants not previously parties to this litigation: Conan Licensing Company ("CLC"), Conan Merchandising Corporation ("CMC"), Merchandise Development Corporation ("MDC"), Summit Licensing Company ("SLC"), Sigma Merchandising Corporation ("Sigma"), and University Patents, Inc. ("UPI"). CPI objects (1) that SLC, Sigma, and UPI are improper parties, and (2) that Mattel's proposed counterclaim fails to state a cause of action.

**A. SLC, Sigma, and UPI as Counterclaim Defendants**

Rule 19(a) of the Fed.R.Civ.P. provides in relevant part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or

impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

■ Mattel alleges, and CPI does not dispute, that SLC "is a partnership between MDC and Sigma ...," Counterclaim ¶ 8, Exh. A to Mattel's Notice of Motion, and that both SLC and Sigma have their principal place of business in New York. Counterclaim ¶¶ 8 and 9. Moreover, Mattel claims that it paid SLC $50,000 to terminate Mattel's license agreement with CPI. Counterclaim ¶ 37. Mattel now seeks to recover this money directly from SLC. Counterclaim Prayer for Relief, ¶ A. Thus, it is apparent that SLC is subject to service of process here in New York, its joinder will not destroy subject matter jurisdiction, and, without SLC, "complete relief cannot be accorded" to Mattel. Accordingly, SLC properly may be joined as a counterclaim defendant.

■ However, with regard to Sigma, Mattel only argues that, unless Sigma is joined to the action, MDC "may be subject to the risk of multiple litigation ... [because] MDC could arguably seek indemnification or contribution from [Sigma] if judgment is entered against it." Mattel's Reply Memorandum of Law In Support Of Motion For Leave To File A Counterclaim, 5. Mere speculation that MDC may seek indemnification from Sigma is not sufficient to justify joinder under Rule 19(a). Rule 19(a) requires either an allegation that (1) without Sigma, "complete relief cannot be accorded," or (2) "[Sigma] claims an interest relating to the subject of the action." Mattel makes neither of these allegations. Accordingly, Mattel is not permitted to include Sigma as a counterclaim defendant.

Mattel also seeks to join UPI as a counterclaim defendant on the ground that "[MDC] is ... a wholly owned subsidiary of [UPI] ... [and] MDC is the alter ego or mere instrumentality of [UPI]." Counterclaim ¶ 5. Because CPI concedes MDC

may be properly joined as a counterclaim defendant, both CPI and Mattel agree that the sole issue in determining whether UPI also may be joined is whether UPI so controlled and dominated MDC as to justify "piercing the corporate veil." I find that Mattel has pled sufficient facts which, if proven, may justify disregarding the corporate formalities and holding UPI liable for MDC's obligations.

Among the factors a court should consider in determining whether to "pierce the corporate veil" are whether:

[1] The parent corporation owns all or most of the capital stock of the subsidiary [;]

[2] The parent and subsidiary corporations have common directors or officers [;]

[3] The parent corporation finances the subsidiary [;]

[4] The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation [;]

. . . . .

[5] The parent corporation pays the salaries and other expenses or losses of the subsidiary [;]

. . . . .

[6] The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take their orders from the parent corporation in the latter's interest.

*World Wide Carriers, Ltd. v. Aris Steamship Co.*, 301 F.Supp. 64, 67–68 (S.D.N.Y. 1968). Mattel has pled many facts which, if proven, would tend to support a finding that MDC is a mere instrumentality of UPI: (1) UPI owns all of MDC's stock, Counterclaim ¶ 5; (2) A. Sidney Alpert was simultaneously an officer of UPI and the President of MDC, Counterclaim ¶ 40; (3) through MDC, UPI entirely funded CLC, *id.*; (4) UPI at all times paid the salary of MDC's President and sole employee, Mr. Alpert, *id.*; (5) UPI caused MDC's incep-

tion by incorporating MDC in April, 1980, Counterclaim ¶ 5; (6) Mr. Alpert did not act in the independent interest of MDC, but rather acted in UPI's interest, at UPI's direction, from UPI's offices, Counterclaim ¶ 40. These allegations are at least sufficient to withstand CPI's opposition to Mattel's motion for leave to file a counterclaim against UPI. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

**B. RICO Cause of Action**

CPI also alleges that Mattel fails to state a RICO claim. Specifically, CPI asserts that (1) Mattel has failed to plead the majority of its predicate acts of fraud with adequate particularity, as required by Fed. R.Civ.P. 9(b), and (2) the two predicate acts of fraud which are pled with sufficient particularity do not satisfy the requirement that a "pattern of racketeering activity" be alleged. *See* 18 U.S.C. § 1962(c). Given that CPI concedes that two of Mattel's proposed predicate acts have been sufficiently particularized, I need only address CPI's argument that "[t]wo instances do not adequately allege a 'pattern of racketeering activity'...." [1] Plaintiff's Memorandum In Partial Opposition To Defendant's Motion For Leave To Amend Its Answer To File A Counterclaim, 11. Although it is true that "two isolated acts of racketeering activity do not constitute a pattern," *Sedima, S.P.R.L. v. Imrex Co.*, — U.S. ——, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), when two acts which relate to each other and arise out of the same scheme are alleged, the requirement of pleading a "pattern of racketeering activity" has been met. *Beth Israel Medical Center v. Smith*, 576 F.Supp. 1061, 1066 (S.D.N.Y.1983). Mattel has alleged at least two related and sufficiently particularized predicate acts and, thus, its RICO claim has been adequately pled.

In sum, Mattel's motion for leave to file a counterclaim is granted in its entirety

---

**1.** I do note that it appears that Mattel has satisfied the requirements of Fed.R.Civ.P. 9(b) as to

numerous other predicate acts alleged.

with the single exception that Sigma may not be joined as a counterclaim defendant.

## II. Plaintiff's Motion for Leave to File a Third Amended Complaint

 CPI moves pursuant to Fed.R. Civ.P. 15(a) for leave to file a Third Amended Complaint which would include a cause of action under RICO. Plaintiff alleges as predicate acts to its RICO claim several securities law violations committed by Mattel between 1970 and 1974. CPI also alleges as predicate acts several mail and wire fraud violations committed by Mattel between 1980 and 1982. "CPI does not suggest that Mattel's predicate securities violations ... of 1970 to 1974 injured CPI,"[2] Plaintiff's Memorandum Of Law In Reply To Mattel's Opposition To Plaintiff's Motion For Leave To File A Third Amended Complaint ("Plaintiff's Reply Memo"), 2, nor does CPI contest the fact that there is no nexus between the alleged securities law violations and the alleged mail and wire fraud committed between 1980 and 1982, Plaintiff's Reply Memo, 4. Yet, plaintiff, without citing any authority to support its proposition, argues that it has standing to allege the past securities violations stating "[a] party injured by any part of a pattern of racketeering has standing under RICO to recover for that injury." Plaintiff's Reply Memo, 2. I disagree to the extent that this implies that one can allege any past act of another as a predicate act, regardless of whether he has been injured by that act or whether that act relates at all to the other alleged predicate acts. In *Sedima, S.P.R.L. v. Imrex Co.,* the Supreme Court emphasized that it is the "factor of *continuity plus relationship* which combines to produce a pattern" of racketeering activity. 105 S.Ct. at 3285 n. 14 (emphasis in original) (quoting S.Rep. No. 91–617, p. 158 (1969)). There is clearly neither continuity nor relationship between the alleged securities violations and the alleged acts of mail and wire fraud. However, it does appear that a pattern of racketeering activity has been alleged at least with regard to the acts of mail fraud and wire fraud CPI claims took place during its negotiations with Mattel from 1980 through 1982. Thus, plaintiff may successfully plead a pattern of racketeering activity, although it may not plead as part of that pattern the alleged securities violations between 1970 and 1974 which are unrelated to the other predicate acts and which caused no injury to CPI.

Although CPI does not specify in its Proposed Third Amended Complaint under which subsections of Title 18, section 1962 it is suing, it implies in its Reply Memo that it is alleging claims under subsections (a), (b), and (c). Plaintiff's Reply Memo, 5–8. Mattel argues that CPI's claims under each subsection are deficient.

The first subsection reads in pertinent part:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Mattel does not contest that, at least with regard to this subsection of section 1962, "the liable person and the enterprise may both be the same entity." Surreply Memorandum Of Law In Opposition To CPI's Motion For Leave To File A Third Amended Complaint ("Surreply Memo"), 6; *see Haroco, Inc. v. American National Bank and Trust Company of Chicago,* 747 F.2d 384, 402 (7th Cir.1984) ("Subsection (a) does not contain any of the language in subsection (c) which suggests that the liable person and the enterprise must be separate. Under subsection (a) ... the liable person may be a corporation using the proceeds of a pattern of racketeering activity in its operations.") Mattel simply states in broad, conclusory terms that "CPI's contention that it has stated a claim under that

---

**2.** CPI was not formed until 1977. Proposed Third Amended Complaint ¶ 6.

subsection [ (a) ] must fail because nowhere in its third amended complaint has CPI made allegations required to state a claim under Section 1962(a)." Surreply Memo, 6. Mattel does not cite to any specific deficiencies, however, nor are any apparent. I find that CPI has adequately pled a cause of action under section 1962(a).

■ Subsection (b) of section 1962 provides in part:

(b) It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Essentially, plaintiff contends that the July, 1981, Conan-Mattel License Agreement (the "License"), which permitted Mattel to manufacture plastic action figures of CONAN, was acquired through a pattern of racketeering and gave Mattel an "interest in or control of" CPI. I disagree. The mere granting of a license to manufacture CONAN toys may not be read to confer onto Mattel an "interest in or control of" CPI, nor does CPI cite to any authority to support such a strained reading of section 1962(b). *Cf. United States v. Meyers*, 432 F.Supp. 456, 461 (W.D.Pa.1977) ("an 'interest' is akin to a continuing proprietary right in the nature of a partnership or stock ownership"). Thus, no cause of action has been alleged under section 1962(b).

■ CPI has also not adequately pled a cause of action under section 1962(c). This section reads in part:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

The Second Circuit has recently stated unequivocally that, with regard to section 1962(c) claims, the "person" and the "enterprise" must be distinct and separate entities. *Bennett v. United States Trust Co.*, 770 F.2d 308, 314 (2d Cir.1985) ("[R]equiring a complaint to distinquish between the enterprise and the person conducting the affairs of that enterprise in the prohibited manner is supported by the plain language of section 1962(c), which clearly envisions two entities."). Here, no such separateness exists. It is clear that Mattel, the only defendant named in the complaint, has been cast as both the "person" and the "enterprise." Proposed Third Amended Complaint ¶ 66 ("Mattel is an enterprise which has engaged in a pattern of racketeering activity."). Accordingly, no cause of action under section 1962(c) is alleged.

■ Finally, Mattel also objects to CPI's RICO claim arguing that the fraud allegations are not sufficiently particularized in violation of Fed.R.Civ.P. 9(b).[3] As I noted in my December 11, 1984 Memorandum and Order in this case, Rule 9(b) will be satisfied if the complaint specifies the following:

(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants "obtained as a consequence of the fraud."

*Todd v. Oppenheimer & Co., Inc., et al.*, 78 F.R.D. 415, 420–21 (S.D.N.Y.1978) (quoting *Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080, 1088 (S.D.N.Y. 1977)). I find that plaintiff's proposed claims of fraud and misrepresentation regarding CONAN have been pled with sufficient particularity.[4] For example, CPI alleges that on September 10, 1981, Jack D. Fox of Mattel sent a letter to Sid Alpert of

---

**3.** Fed.R.Civ.P. 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

**4.** Given that CPI may not plead the alleged securities violations as part of the pattern of racketeering activity, I need not address whether paragraphs 67 through 80 comply with the requirements of Rule 9(b).

CPI which essentially stated that Mattel was moving foreward on the CONAN project. CPI goes on to specify how this statement mislead CPI and how Mattel benefitted from the statement. Proposed Third Amended Complaint ¶¶ 56–58. These allegations and similar claims of fraud contained in the proposed Third Amended Complaint are adequate under Rule 9(b). Defendant is on sufficient notice of what CPI is charging. *See Systems Research, Inc. and Systems Control, Inc. v. Random, Inc. and Orvin Nordness Jr.*, 614 F.Supp. 494, 497 (N.D.Ill.1985) ("The complaint sets out a scheme to defraud, use of the mails and wires in furtherance of it, and sufficient facts to put defendants on notice of the charges.").

In sum, plaintiff is granted leave to file a Third Amended Complaint to the extent that it pleads a cause of action under 18 U.S.C. § 1962(a) which does not allege as part of the pattern of racketeering activity securities laws violations by Mattel from 1970 through 1974. Defendant's motion for leave to file a counterclaim is granted except that Sigma may not be joined as a counterclaim defendant.[5]

SO ORDERED.

---

**5.** Plaintiff's counsel has notified my chambers that the request for reconsideration of Magistrate Dolinger's June 24, 1985 decision disqualifying Arthur M. Lieberman, Esq. from pre-trial matters has become moot. Accordingly, the request is denied.