The EQUITABLE LIFE ASSURANCE
SOCIETY OF the UNITED
STATES, Plaintiff,

v.

ALEXANDER GRANT & CO.,
Defendant.

No. 85 Civ. 3595.

United States District Court,
S.D. New York.

Dec. 19, 1985.

Werner Weinstock, New York City, for plaintiff.

Parker Chapin Flattau & Klimpl, New York City (Alvin Stein, Lee W. Stremba, of counsel), for defendant.

WALKER, District Judge.

### Introduction

This matter is currently before the Court on defendant's motion to dismiss the complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6). Defendant also seeks court-awarded sanctions against plaintiff under Rule 11.

Plaintiff Equitable Life Assurance Society of the United States (Equitable), brings three causes of action against Alexander Grant & Co. (Grant) arising out of the accounting firm's alleged role as auditor of ESM Group, Inc., its subsidiaries, divisions and affiliates (ESM):

(1) Equitable's first claim alleges that Grant, in issuing statements on behalf of ESM, violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq* (1970). As a result of that violation, Equitable claims it has been damaged in the amount of $7,000,000 plus interest. Plaintiff also demands trebled damages and attorney's fees under RICO.

(2) Equitable's second claim alleges gross negligence on the part of Grant in the performance of its accounting duties for ESM. Equitable seeks $7,000,000 plus interest in damages on this count.

(3) The third count of the complaint alleges fraud by Grant in reporting the financial condition of ESM. Equitable seeks $7,000,000 plus interest in actual damages on this claim and $10,000,000 in punitive damages.

Plaintiff claims that all damages on all counts result from Equitable's issuing "various policies of life insurance" on "senior officers of ESM." ¶ 12, 13

The complaint alleges federal jursidication under both RICO, 18 U.S.C. § 1965 and diversity jurisdiction pursuant to 28 U.S.C. § 1332. Paragraph 5 states that Equitable "is a corporation organized and existing under the laws of the State of New York, with an office at 1285 Avenue of the Americas, New York City, New York." Paragraph 6 states that Grant "is a partnership of certified public accountants organized and existing under the laws of the State of Illinois, and transacts business in its offices in the City, County and State of New York, as well as in various other cities of the United States."

When considering a motion to dismiss the complaint, the court is required to construe the complaint in the light most favorable to the plaintiff. Indeed, "[f]or the purposes of a motion to dismiss, the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969). The complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### Jurisdiction

Plaintiff's allegation of diversity jurisdiction is deficient and fails to establish diversity under 28 U.S.C. § 1332.

It is fundamental that a complaint must affirmatively allege subject matter jurisdiction and that absent a properly pleaded basis for federal jurisdiction the complaint must be dismissed. *John Birch Society v. National Broadcasting Co.,* 377 F.2d 194, 197–98 (2d Cir.1967); *Martin Hodas, East Coast Cinematics, Inc. v. Lindsay,* 431 F.Supp. 637, 640 (S.D.N.Y.1977). Under the law of diversity jurisdiction, a corporation is considered a citizen of both its state of incorporation and the state where it has

its principal place of business. 28 U.S.C. § 1332(c).

■ On the other hand, a partnership is deemed a citizen of *every* state of which *any* partner is a citizen. *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 456, 20 S.Ct. 690, 693, 44 L.Ed. 842 (1900); *Woodward v. D.H. Overmeyer Co.*, 428 F.2d 880, 883 (2d Cir.1970). Even if a single partner is not diverse to the plaintiff, the action must be dismissed. *Cunard Line, Ltd. v. Abney*, 540 F.Supp. 657, 660 (S.D.N.Y.1982).

■ Here, although ¶ 5 of the complaint alleges that Equitable has "an office" in New York, nowhere is the principal place of business of the corporation alleged. For that reason, plaintiff has failed to properly plead its own citizenship. Moreover, the complaint alleges neither the citizenship of Grant's partners, nor that whatever their citizenship Equitable's is diverse. It is apparent that Equitable has not alleged complete diversity between itself and Grant because it cannot do so. Presumably some of the partners in Grant's New York office are citizens of New York and would therefore be non-diverse to Equitable, a New York company. Thus, plaintiff has failed to adequately plead diversity.

Paragraph 2 of the Complaint alleges an alternate basis for federal jurisdiction under RICO, 18 U.S.C. § 1965 and the principles of pendent jurisdiction. Since the court holds that there has been no adequate allegation of diversity jurisdiction, plaintiff's entire complaint, the RICO claim and the pendent state claims of gross negligence and fraud, stands or falls together.

The Court holds that since the complaint fails to adequately plead a RICO cause of action, the entire complaint must be dismissed. Moreover, the Court concludes that plaintiff's common law fraud and gross negligence claims are deficient and would be dismissed even if a basis for federal jurisdiction existed.

## RICO

Although it is nowhere explicitly stated in the complaint, plaintiff apparently bases its RICO claim on 18 U.S.C. § 1962(c) which provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

■ A plaintiff seeking to bring a civil RICO action must allege the following essential elements:

(1) "that the defendant [a 'person' in terms of the Act]

(2) through the commission of two or more acts;

(3) constituting a 'pattern'

(4) of 'racketeering activity'

(5) directly or indirectly invests in, or maintains an interest in, or participates in

(6) an 'enterprise'

(7) the activities of which affect interstate commerce or foreign commerce."

(8) And "that the plaintiff was injured in his business or property 'by reason of' the aforementioned activity of the defendant."

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984).

### (1) *Persons Liable*

■ A "person" is defined in 18 U.S.C. § 1961(3) as "any individual or entity capable of holding a legal or beneficial interest in property." Equitable has clearly satisfied this pleading element by alleging that "Alexander Grant & Company ("Grant") is a partnership of certified public accountants organized and existing under the laws of the State of Illinois." ¶ 6.

(2) *Predicate Acts*

■ The offenses which underlie "racketeering activity" are the predicate acts necessary for a RICO violation. They are defined in 18 U.S.C. § 1961 as acts "indictable" or "punishable" under various federal criminal statutes and acts "chargeable" under certain state criminal laws. These include murder, kidnapping, arson, robbery, bribery, extortion, dealing in narcotics, securities fraud, mail fraud and wire fraud. Civil litigation under RICO typically involves allegations of mail fraud or wire fraud.

■ Viewed in its most charitable light, the complaint alleges violation of the federal mail fraud statute, 18 U.S.C. § 1341. Construing the disjointed complaint generously, the Court concludes that two paragraphs of the complaint, when combined, constitute a facial pleading of mail fraud as a predicate act.

Although plaintiff's claim for relief under RICO does not mention "fraud", ¶ 19(a), declared applicable to all claims, appears to allege fraud:

> (a) Grant knew or should have known that financial information contained in the Statements was materially false and misleading and would be provided to and relied upon by plaintiff in underwriting the applications for insurance on the lives of the senior officers of ESM; ...

In addition, ¶ 21 accuses Grant of violating § 1962 of RICO "by the use of means and instrumentalities of interstate commerce *and of the mails*" (emphasis added). Taken together, these paragraphs on their face plead a violation of the federal mail statute. A separate question is whether the offense has been adequately pleaded under Fed.R.Civ.P. 9(b).

In its recent decision in *Sedima, S.P.R.I. v. Imrex Co.*, — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court left open the question of whether more than two predicate acts must be alleged to sustain a RICO claim. We need not reach that issue here, however, because plaintiff appears to allege three separate acts of mail fraud as predicate acts:

10. (a) On or about January 11, 1977, Grant certified the accuracy of and published the Statements of ESM as of December 31, 1976, and plaintiff obtained a copy thereof on or about September 28, 1977.

(b) On or about February 4, 1982, Grant certified the accuracy of and published the Statements of ESM as of December 31, 1981, and plaintiff obtained a copy thereof on or about July 1, 1982.

(c) On or about January 25, 1983, Grant certified the accuracy of and published the Statements of ESM as of December 31, 1982, and plaintiff obtained a copy thereof on or about February 13, 1984.

(3) *and* (4) *"Pattern" of Racketeering Activity*

Section 1961 prohibits the use of a "pattern" of predicate acts to play a role in an interstate "enterprise." The statute does not define a "pattern of racketeering activity" but instead states that a pattern "... requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter [October 15, 1970] and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

There has been some conflict in the Circuit Courts as to whether a "pattern" requires that the racketeering predicate acts be related to each other in some way or whether they need only be related to the "enterprise" conducted. The Second Circuit has indicated that no unified scheme among predicate acts is required. *See United States v. Weisman*, 624 F.2d 1118, 1122–23 (2d Cir.1980). Regardless, the three alleged predicate acts here are closely enough related that the issue need not

be reached. As alleged, all three stem from Grant's audits of ESM and the preparation of financial statements.

> (5), (6) *and* (7) *Directly or indirectly invests in, maintains an interest in, or participates in an "enterprise", the activities of which affect interstate commerce*

Apparently in an effort to bring Grant's actions within the scope of RICO, ¶ 21 of the complaint closely tracks the language of § 1962(c);

> Upon information and belief, in connection with the issuance of life insurance by Equitable on the lives of ESM's officers, Grant, in violation of Section 1962 of the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. §§ 1961, *et seq.*, directly or indirectly, by the use of means and instrumentalities of interstate commerce and of the mails, conducted or participated in the conduct of ESM's affairs through a pattern of racketeering activity.

■ Thus, plaintiff in this paragraph impliedly alleges that ESM was the "enterprise" in whose affairs Grant participated through unlawful means. But, in ¶ 6 of the appendix to plaintiff's brief in opposition to the motion to dismiss, plaintiff contends that *Grant* is the enterprise. The same person may not be *both* the person employed by the enterprise and the enterprise under RICO. *See Haroco, Inc. v. American National Bank & Trust*, 747 F.2d 384 (7th Cir.1984); *Rae v. Union Bank*, 725 F.2d 478 (9th Cir.1984). The language of ¶ 21, however, in following § 1962(c), indicates that plaintiff must have intended ESM to be the "enterprise" and the Court will give plaintiff the benefit of the doubt. Whether or not ¶ 21 accidentally pleads correctly is irrelevant. Plaintiff's conflicting statements in its appendix merely reflect the lack of understanding of RICO evident throughout the complaint and brief.

■ Plaintiff has, however, clearly failed to allege that ESM is an enterprise "engaged in, or the activities of which affect, interstate commerce ..." 18 U.S.C. 1962(c). That allegation is required by *Moss, supra*. The complaint therefore fails to allege an essential element of RICO and the RICO claim must be dismissed under 12(b)(6) for failure to state a claim. The inadequacies of this complaint, however, are even more extensive.

> (8) *Injured "by reason of" racketeering activity.*

■ The complaint has also failed to set forth any factual or logical connection between the alleged racketeering of defendant and the loss to plaintiff on unspecified life insurance policies. On the basis of plaintiff's skeletal pleading it is impossible to determine, or even imagine, how a life insurer, issuing life insurance on ESM's executives, could be injured "by reason of" the alleged mail fraud. Even if plaintiff's parroting of the language of injury technically states the necessary element for purposes of 12(b)(6), it still falls far short of the additional pleading requirements of Fed.R.Civ.P. 9(b).

### Fed.R.Civ.P. 9(b)

Rule 9(b) provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.

This rule applies to allegations under RICO. *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 19 (2d Cir.1983); *Mauriber v. Shearson/American Express, Inc.*, 546 F.Supp. 391, 397. (S.D.N.Y.1982). The stringent specificity requirement of 9(b) "stems not only from the desire to minimize the number of strike suits but also more particularly from the desire to protect defendants from the harm that comes to their reputations or to their good will when they are charged with serious wrongdoing." *Segal v. Gordon*, 467 F.2d 602, 607 (2d Cir.1970) (citing 5 C. Wright & Miller,

*Federal Practice and Procedure* § 1298, at 413 (1969) ). "Rule 9(b) is intended to ensure that each defendant is provided with reasonable detail concerning the nature of his particular involvement in the alleged fraud." *Goldberg v. Meridor*, 81 F.R.D. 105, 110 (S.D.N.Y.1979).

The complaint in this action is wholly devoid of the required detail on both the federal mail fraud and state common law claims. As pleaded, it is woefully inadequate and smacks of strike suit litigation. As the court in *Goldberg* stated in words applicable here: "The current complaint so totally lacks the detail necessary to put a defendant on notice of the charges against him as to require wholesale repleading." *Id.* at 111.

 The plaintiff, having failed to supply the necessary detail in the complaint under 9(b), filed a brief in opposition to this motion containing numerous references to matters outside the pleadings and the scope of this case which detail the misdeeds of Grant and ESM. The defendants have correctly styled this the "me too" approach to litigation. The fact that other people in this country have accused Grant of fraud is irrelevant to the sufficiency of plaintiff's complaint and does nothing to account for its fatal lack of detail.

In a recent case in this district, Judge Duffy detailed the elements required by 9(b) in a mail fraud claim under RICO. The complaint must specify: "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants 'obtained as a consequence of the fraud.' (citation omitted)." *Conan Properties, Inc. v. Mattel, Inc.*, 619 F.Supp. 1167 (S.D.N.Y.1985) (quoting *Todd v. Oppenheimer*, 78 F.R.D. 415 (S.D.N.Y. 1978) ).

The complaint in this case pleads both the federal mail fraud claim and the common law fraud claim on the basis of the same allegations. Both claims fall far short of the specificity required by 9(b).

 In ¶ 21 of the complaint, plaintiff states its first cause of action under RICO "upon information and belief." Such a pleading is entirely inappropriate under 9(b). As the Second Circuit stated in *Segal, supra*, "the general rule [is] that Rule 9(b) pleadings cannot be based 'on information and belief.' While the rule is relaxed as to matters peculiarly within the adverse parties' knowledge, the allegations must then be accompanied by a statement of the facts upon which the belief is founded." 467 F.2d at 608.

Here, the plaintiff's brief contends that "[t]he specifics are within defendant's knowledge." Pl.mem. p. 4. Whether that is true or not, the plaintiff has provided no facts to support its belief.

To follow the four-part test of *Conan, supra:*

(1) the complaint gives no indication of "precisely what statements were made in what documents." Plaintiff simply alleges that Grant published financial statements of ESM "for certain periods, including its fiscal years ending December 31, 1976, 1981 and 1982...." ¶ 10. Later in the complaint, plaintiff alleges that "Grant prepared, published, and certified false, misleading, or fraudulent information concerning ESM, including the Statements, for calendar years 1976 through 1982." ¶ 16. The complaint then ostensibly provides the details of the misstatements:

¶ 17. Upon information and belief, the Statements misstated and failed to disclose the true financial condition of ESM in the following material respects, among others:

(a) The profits reported were materially overstated or did not in fact exist.

(b) ESM's report of its income and its current assets did not disclose that it had borrowed approximately $400 million, ($400,000,000) more than it had loaned to

its customers upon the customers' collateral securities.

\* \* \* \* \* \*

¶ 18 ... They grossly overstated ESM's assets, revenues and income, and understated ESM's liabilities and expenses, for each of the years in question and, with the issuance of each such successive Statement, the cumulative distortion caused by the deficiencies in the Statements was increased.

■ This "shotgun" approach to the financial statements is patently insufficient under Rule 9(b). The complaint does not even begin to detail what portions of what statements made what fraudulent, misrepresentations. There is no way for a defendant, who audited a large securities firm over a seven year period, to frame an answer on the basis of this skeletal pleading.

■ The complaint also alleges misrepresentation by Grant's senior partner in Miami, Jose Gomez:

On several occasions between 1977 and 1984, Equitable discussed financial information concerning ESM including financial information disclosed in the aforementioned Statements, with Gomez. Gomez reaffirmed the accuracy and reliability of financial information concerning ESM and did not state or suggest that any information in the Statements was materially inaccurate, misleading or unreliable. In issuing said policies, Equitable relied upon the said information provided by Gomez. ¶ 15.

Again, this allegation is improper. The claim extends over seven years, and involves nebulous "financial information" and "statements". None of the required detail is provided.

(2) As noted, the complaint speaks generally of yearly statements for 1976, 1981 and 1982 as well as statements by Gomez on "several occasions between 1977 and 1984." ¶ 10, 15. This clearly does not satisfy the requirements under 9(b) that "the time and place of each such statement" be specified.

(3)(a) The allegations concerning the annual reports merely claim that the "profits reported were materially overstated or did not in fact exist," (¶ 17(a)), assets were overreported by approximately $400 million, (¶ 17(b)), and again, "assets, revenues and income" were overstated while "liabilities and expenses" were understated. ¶ 18. With regard to the statements of Gomez, the complaint simply alleges that he "did not state or suggest that any information in the Statement was materially inaccurate, misleading or unreliable." ¶ 15.

Plaintiff does not provide any detail as to the content of all these statements. It is not enough under 9(b) to state that "profits were materially overstated" or that "assets, revenues and income were overstated." *Decker v. Massey-Ferguson, Ltd.,* 534 F.Supp. 873, 881 (S.D.N.Y.1981) ("[Plaintiff] has failed to allege the amount or nature of such 'overstatement,' and the general allegation that assets were overstated is clearly inadequate.")

■ (b) The most bewildering part of an otherwise obtuse complaint is the "manner in which [the statements] misled the plaintiff." Even assuming that all the other allegations of fraud are sufficient, the failure to adequately allege any causal connection between the alleged fraud and the issuance of life insurance is fatal to the complaint.

Plaintiff alleges that it issued "insurance on the lives of the senior officers of ESM" in reliance on the statements prepared by Grant. ¶ 12. The RICO claim contends that Grant's racketeering activity induced Equitable to issue those unspecified policies for unspecified individuals. ¶ 21, 22. As a result, Equitable alleges without elaboration, it suffered $7,000,000 in damage. ¶ 23. In ¶ 29, under its claim for common law fraud, plaintiff alleges that in reliance on the fraudulent statements of Grant on behalf of ESM it "was induced to enter into contracts, in issuing said life insurance policies and paying a death claim in the amount of $6.5 million." Nowhere does the complaint set forth what policies were

issued, to whom and for what amount, or how, when and to whom a death benefit was paid.

Most fantastical are plaintiff's various allegations that it "relied" upon Grant's statements in issuing life insurance. As noted above in the RICO discussion, no indication is given as to how Equitable relied upon financial statements of ESM to underwrite life insurance policies or why Grant is liable for a death benefit paid by Equitable. There is no allegation that premiums were not paid; rather the damage to Equitable allegedly occurred when and because a covered individual died. It is difficult to imagine how ESM's financial statements could be material to the issuance of life insurance on the company's executives. This Court suspects this to be the reason for the failure of the pleading.

Plaintiff's failure to adequately allege any "causal connection between that conduct (the asserted 'pattern of racketeering activity') and the alleged damage to the plaintiff [ ]" is a fatal defect even under pleading requirements less vigorous than 9(b). *Caliber Partners, Ltd. v. Affeld,* 583 F.Supp. 1308, 1313 (N.D.Ill.1984).

■■■ (4) Finally, the complaint offers no hint of what Grant obtained from its scheme to defraud Equitable. It is not alleged that Grant benefited in any way by inducing Equitable to issue life insurance. This pleading requirement is closely related to the question of how yearly financial statements could possibly be connected to the issuance of life insurance. Perhaps in a second complaint, the plaintiff can enlighten both this Court and the defendant on this score.

Instead of confining itself to a good faith defense of its pleading efforts, Equitable devotes a large part of its opposition brief to reporting statements and action by the Receiver for ESM, the SEC and government regulatory agencies concerning Grant's involvement with ESM. Pl. Mem., pp. 11, 14. Equitable also devotes considerable space in its memorandum to description of an action brought by the City of Toledo, Ohio against Grant. *Id.* at 7. Ap-

parently, Equitable believes that because unrelated parties have charged Grant with wrongdoing concerning audits of ESM, it need not detail any factual or legal basis for its claims. This Court holds otherwise.

*Gross Negligence*

In its second cause of action, plaintiff alleges that "Grant was grossly negligent in the performance of its duties ..." ¶ 25. Defendant seeks to dismiss this claim under Rule 12(b)(6) for failure to state a claim. This Court agrees that there is no basis under New York law for an action in gross negligence against the accounting firm and therefore this claim must be dismissed.

Plaintiff brings this action under "the laws of the State of New York", (¶ 2), so Judge Cardozo's seminal opinion in *Ultramares Corp. v. Touche, Niven & Co.,* 255 N.Y. 170, 174 N.E. 441 (1931), as recently reaffirmed in *Credit Alliance Corp. v. Arthur Andersen & Co.,* 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985), dictates this result. In *Ultramares,* the Court of Appeals limited the ability of those not in privity with the accountant to recover for negligence:

> ... [I]f less than [fraud] is proved, if there has been neither reckless misstatement nor insincere profession of an opinion, but only honest blunder, the ensuing liability for negligence is one that is bounded by the contract, and is to be enforced by the parties by whom the contract has been made.

255 N.Y. at 189, 174 N.E. 441.

*Ultramares* has remained the law of New York, but its legacy has been much discussed in light of an opinion Cardozo had written nine years before *Ultramares.* In *Glanzer v. Shepard,* 233 N.Y. 236, 135 N.E. 275 (1922), the court permitted a negligence action against public weighers despite the absence of a contract between the parties because "the plaintiff's intended reliance, on the information *directly transmitted* by the weighers, created a bond so closely approaching privity that it was, in

practical effect, virtually indistinguishable therefrom." *Credit Alliance Corp.*, 65 N.Y.2d at 545–546, 493 N.Y.S.2d 435, 483 N.E.2d 110 (emphasis in original).

 Thus a gray area remained between the prohibitive rule of *Ultramares* and the "quasi-privity" formulation of *Glanzer*. In the *Credit Alliance* decision this year, however, the Court of Appeals clearly delineated the prerequisites for recovery by a nonprivy against an accountant for negligence. The complaint must allege:

(1) "the accountants knew the identity of the specific nonprivy party who would be relying upon the audit reports ..."

(2) "the accountants' awareness of a particular purpose for their services;

3) and certain conduct on their part creating an unmistakable relationship with the reliant plaintiff." 65 N.Y.2d at 554, 493 N.Y.S.2d 435, 483 N.E.2d 110.

In this case, there is no allegation that the parties were bound by contract. Equitable must therefore meet the pleading requirements as set out in *Credit Alliance*. Equitable alleges that "Grant knew and intended that those Statements as prepared, certified and published would be disseminated to Equitable and would be relied upon by Equitable in issuing said policies." ¶ 14.

This appears to allege minimal, but sufficient, knowledge by Grant of the identity of Equitable and the specific purpose for which the Statements would be used.

Equitable has failed, however, to allege conduct between the parties creating an "unmistakable relationship". In ¶ 15, it is alleged that Equitable, "[o]n several occasions between 1977 and 1984 ... discussed financial information concerning ESM ... with Gomez." ¶ 15. The complaint contends that Gomez "did not state or suggest that any information in the Statements was materially inaccurate, misleading or unreli-

able. In issuing said policies, Equitable relied upon the said information provided by Gomez." *Id.* This clearly is not "conduct on the part of the accountants linking them to that party ... which evinces the accountant's understanding of that party['s] ... reliance." 65 N.Y.2d at 551, 493 N.Y.S.2d 435, 483 N.E.2d 110.

The facts of *Credit Alliance* are illustrative. In that decision, the court actually considered two actions consolidated for appeal. In one, *Credit Alliance v. Arthur Andersen*, recovery from an accountant was denied and in the second, *European American Bank and Trust Co. v. Strauhs & Kaye et al.*, 102 A.D.2d 146, 477 N.Y. S.2d 146 (1 Dept.1984), it was allowed.

In the second case, the court found that "the facts as alleged by EAB clearly show that S & K was well aware that a primary if not the exclusive *end and aim* of auditing its client ... was to provide EAB with the financial information it required." 65 N.Y.2d at 554, 493 N.Y.S.2d 435, 483 N.E.2d 110. The parties "remained in direct communication ... throughout the course of EAB's lending relationship with [S & K's client]." *Id.* The court concluded that the relationship "between the parties was the practical equivalent of privity." *Id.* Equitable has not alleged such a relationship here. At most, Equitable spoke to Grant's partner Gomez on "several occasions" over seven years. And there is no allegation that Gomez ever knew these contacts were related to the issuance of life insurance.[1]

This case more closely parallels that of the first action in *Credit Alliance*, where the Court of Appeals denied recovery. The court spoke almost directly to this case:

Though the complaint and supporting affidavit do allege that Andersen specifically knew, should have known or was on notice that plaintiffs were being shown the reports by Smith, Andersen's client,

---

1. *See also Westpac Banking Corp. v. Deschamps,* 66 N.Y.2d 16, 494 N.Y.S.2d 848, 484 N.E.2d 1351 (1985), and *Lumbard v. Maglia, Inc., et al.,* 621 F.Supp. 1542, 1545 (S.D.N.Y.1985) ("In order to survive a motion to dismiss, the complaint or

accompanying affidavits must contain some allegation 'to demonstrate the existence of a relationship between the parties sufficiently approaching privity.'" [citing *Credit Alliance, supra* ] ).

in order to induce their reliance thereon, nevertheless, there is no adequate allegation of either a particular purpose for the reports' preparation or the prerequisite conduct on the part of the accountants. While the allegations state that Smith sought to induce plaintiffs to extend credit, no claim is made that Andersen was being employed to prepare the reports with that particular purpose in mind....

Equitable has failed to allege a relationship between the parties even approaching one of "practical equivalent of privity." Therefore, New York law bars recovery on any negligence theory.[2]

Plaintiff's only attempt to contest this issue comes in a single footnote of its memorandum, where it points out that recovery is sought for "gross" negligence, not negligence. In this context, that is a distinction without a difference. Under New York law, grossly negligent misrepresentation is clearly distinguished from fraudulent misrepresentation. While grossly negligent conduct may lead to an inference of fraud, *State Street Trust Co. v. Ernst*, 278 N.Y. 104, 112, 15 N.E.2d 416 (1938), there is no independent action for gross negligence against accountants. Plaintiff has already claimed fraud, so to the extent this cause is based on the ability of gross negligence to infer fraud, it is redundant.

### Conclusion

Diversity of citizenship was insufficiently pleaded in this case. Accordingly, federal question jurisdiction based upon a properly pleaded RICO claim, coupled with pendent jurisdiction over properly pleaded state law claims, would provide the only possible foundation for sustaining the complaint. However, the RICO claim fails because the underlying fraud was not pleaded in ac-

cordance with Rule 9(b) and, in any event, the RICO claim fails to state a claim under Rule 12(b)(6); Equitable has failed to allege that ESM conducted business affecting interstate commerce or that there was any causal connection between the predicate acts of mail fraud and the alleged injury.

Since the RICO claim fails and must be dismissed as improperly pleaded, the pendent state claims must also be dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). But even if this Court had jurisdiction over them, either as pendent claims or by virtue of diversity of citizenship—neither being the case—the state claims would fail since they too contain fatal pleading deficiencies. The fraud claim does not satisfy the pleading requirements of Rule 9(b) and the claim of gross negligence must be dismissed under Rule 12(b)(6) because plaintiff has not alleged a sufficient relationship with the defendant to "establish the practical equivalent of privity."

If plaintiff chooses to pursue this action, it is ordered to file an amended complaint in 30 days. This Court is well aware of the obligations imposed upon parties and attorneys under Rule 11 and of the defendant's desire to see that Rule enforced with appropriate sanctions. In composing an amended complaint, the plaintiff should carefully consider its duty under Rule 11. The Court will not hesitate to reconsider the motion for fees and sanctions in the event that any amended complaint is as baseless as the first.

So Ordered.

---

**2.** It should be noted that the result would be identical even if Florida law applied. *See Investment Corporation of Florida v. Buchman*, 208 So.2d 291, 295 (Fla. 2d D.C.A.1968), where the court dismissed a negligence claim against an accountant with whom the plaintiff had no

contract. The court followed New York law in dismissing in the absence of privity because the plaintiff failed to allege "that its use of the certified statement was the 'end and aim of the transaction.'"