**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**MAXIM INDUSTRIES, INC., David Agnew and Charles Bradley, Defendants.**

Civ. A. No. 81–1138–C.

United States District Court,
D. Massachusetts.

March 19, 1982.

Albert H. Ross, Regional Sol., Michael D. Felsen, U.S. Dept. of Labor, Sol., Boston, Mass., for plaintiff.

Raymond B. Oothout, Kingston, Mass., for defendant Maxim Industries, Inc.

Richard P. Ward, Ropes & Gray, Boston, Mass., for defendants Agnew & Bradley.

## MEMORANDUM

CAFFREY, Chief Judge.

This action was filed by the Secretary of Labor for alleged violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("the Act"). The matter arose from the failure of Maxim Industries, Inc. to compensate its employees for work performed for over two weeks in January 1981, just prior to the closing of the company's Middleborough, Massachusetts plant. This failure allegedly resulted in substantial violations of the minimum wage and overtime provisions of the Act.

On December 21 and 22, 1981 this Court conducted an evidentiary hearing limited to the central issue of whether under the Act defendants David Agnew and Charles Brad-

ley in addition to the corporate defendant were "employers" and thus individually liable along with the corporate defendant for any violations of the Act. On the basis of the evidence presented at that hearing, I find and rule that both David Agnew and Charles Bradley are employers within the meaning of the Act.

### *"Employer" Status Under The FLSA*

■ The Fair Labor Standards Act adopts an expansive definition of the term "employer." *Falk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 431, 38 L.Ed.2d 406 (1973). Under the Act, "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee . . ." 29 U.S.C. § 203(d). The corporate form does not shield from individual liability for violations of the Act those officers who act for the corporation in relation to its employees. *Shultz v. Chalk-Fitzgerald Construction,* 309 F.Supp. 1255, 1257 (1970).* The Act contemplates the possibility of there being simultaneous "employers," any one or all of whom may be liable as employers under the Act. 414 U.S. at 195, 94 S.Ct. at 431.

■ Therefore, the fact that other management employees may have done the actual hiring and firing at the Middleborough plant does not preclude a finding that Agnew and Bradley have "employer" status. Employer status depends on whether it was Agnew and Bradley in whom ultimate control was vested and under whose direction management employees acted. *Marshall v. Gerwill, Inc.,* 495 F.Supp. 744 (D.Md.1980). This is essentially a question of fact to be determined apart from technical concepts of the employer-employee relationship and with regard to the economic realities presented by the facts of the case. See *Goldberg v. Whitaker House Cooperative,* 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961); *Wirtz v. Soft Drinks of Shreveport,* 336 F.Supp. 950 (1971).

---

* Judge Pettine has recently pointed out that "officers of corporations are routinely held to be 'employers' within the meaning of the FLSA and thus proper parties in actions for unpaid wages and overtime compensation." *Marchak v. Observer Publications, Inc.,* 493 F.Supp. 278, 282 (D.R.I.1980).

### Findings of Fact

On the basis of the testimony of the six witnesses called by the Secretary and the documents introduced into evidence, I find as facts the following:

During the period from January 1980 through and including January 1981, Maxim Industries, Inc. was and is wholly owned by Maxim, Inc., and that the owners of Maxim, Inc. are David Agnew and Charles Bradley. Together they were the President, Treasurer, Secretary, and sole members of the Board of Directors of Maxim Industries, Inc., as originally incorporated. During the relevant period, Agnew and Bradley met frequently with the Loan Officer of the bank from which Maxim had obtained loans.

During the same period, David Agnew acted as chairman of the Board of Directors of Maxim Industries and maintained an office in its Middleborough plant. He was observed at the plant during that time regularly and often, and actively engaged in management, supervision, and oversight of Maxim Industries' affairs.

During the period January 1980 through January 1981, Charles Bradley was president of Maxim Industries, and he also maintained an office at the Middleborough plant. He was actively engaged in management, supervision, and oversight of Maxim Industries affairs. Bradley wielded final decision-making power with regard to financial matters of the Middleborough plant. He provided detailed "cash-plans" encompassing disbursements to be made for operations, employee payroll, health insurance, etc.

I further find that Frank Waitkus was Vice President, Operations, of Maxim Industries for the Middleborough plant during the relevant period. The principal employee under Mr. Waitkus was the plant manager. This position was held by Roger Brunelle from January to June 1980, and by Robert Kailher from June 1980 through the closing of the plant in January 1981. I find that the plant manager was invested with power and responsibility to hire and fire employees, supervise them, and schedule work assignments for the production work force. From June 1980 to the plant closing in January 1981, Brunelle was the director of marketing and sales, with power and responsibility to hire and fire sales employees.

Notwithstanding this management structure, and the fact that Mr. Waitkus, Mr. Brunelle, and Mr. Kailher did most of the hiring and firing at the plant, I find that the credible testimony proves that ultimate control and responsibility was vested in David Agnew and Charles Bradley.

Various memoranda introduced into evidence corroborate Agnew's active role in supervising top management, as well as his role in making specific decisions for Maxim Industries in relation to its employees. For example, it was Agnew who made the decision to do nothing when he was informed of the cancellation, of the Company's workmen's compensation insurance, by virtue of non-payment of premiums. He decided to ignore the legal requirement that the policy be maintained. It was also Agnew who made the decision regarding disposition of the Mattos workman's compensation claim during the relevant period. According to the testimony of Robert Kailher, which I believe, it was also Agnew who, at one point in late 1980, when confronted with the fact that the Maxim payroll account could not cover the weekly payroll, promised personally to attend to the matter with the bank.

The evidence of Charles Bradley's involvement as an employer is even more extensive. During the latter part of 1980 and up to the plant closing, Bradley personally supervised the cash-flow of the company on a day-to-day basis. Bradley was the pivotal person in deciding whether to layoff employees or whether to postpone suggested layoffs. He personally issued directives to Mr. Waitkus concerning the details of floor procedures, shipment schedules, and production planning for the balance of 1980. Likewise, he exercised direct control over Mr. Kailher and firm disbursements. In specific relation to employees, Bradley conducted ongoing analyses and issued di-

 

rectives to company managers regarding employee overtime hours. Mr. Bradley also frequently met directly with the union president with regard to such employee problems as the company's failure to make payments to the employee's pension plan, health insurance plan, and workman's compensation program.

Although defendants Agnew and Bradley have attempted to divert attention from their own status as employers by showing that various other management employees also exercised "employer" functions, whether or not these individuals might also be considered employers is irrelevant to the intent of the statute. The statute must be read in light of the harm it seeks to prevent. See *United States v. Rosenwasser,* 323 U.S. 360, 363 n. 3, 65 S.Ct. 295, 296 n. 3, 89 L.Ed. 301 (1945). Here, the harm is the nonpayment of wages to employees for several weeks they worked prior to the closing of the plant.

I find that this harm resulted because Agnew and Bradley as principals of the firm knowingly undertook a calculated risk to keep the plant open, in spite of layoff recommendations from the bank, the union, and their own managers, and in spite of the company's inability fully to fulfill its statutory obligations to its employees.

Defendants Agnew and Bradley have attempted to characterize their involvement with Maxim Industries' Middleborough plant as merely passive. They rely almost exclusively on *Wirtz v. Pure Ice Company,* 322 F.2d 259 (8th Cir.1963), in support of their denial of employer status. *Pure Ice* is a readily distinguishable case. In *Pure Ice,* the individual found not to be an employer was totally unaware of what was going on at the plant, even to the extent of not knowing who the plant manager was. *Id.* at 262–3. Agnew and Bradley, however, were closely and consistently involved with the operations of the company. Their decision to continue to operate the plant through January 1981, despite the fact that payroll obligations could not be met, resulted in the FLSA violations complained of here. This decision was not dele-

gated to any managerial subordinate. Clearly it was they in whom ultimate control was vested. The facts including the fact that both defendants failed either to appear to testify in their own behalf or to request a continuance to enable them to do so compel the conclusion that David Agnew and Charles Bradley were "employers" within the meaning of the Act and consequently are liable along with Maxim Industries, Inc., for whatever damages are proven.