**Giles A. WANAMAKER, Plaintiff,**

v.

**COLUMBIAN ROPE COMPANY, George T. Metcalf and Richard W. Cook, D. Barton Chapman, Tristan E. Beplat, Robert W. Seidler, Stephen G. Ludt, S. Warren Metcalf, Hancock & Estabrook, Defendants.**

No. 88–CV–1135.

United States District Court, N.D. New York.

June 27, 1990.

---

7. Affidavit of Peter Leonelli, 3/22/90, ¶ 7. .

Scott Sardano & Pomeranz, Syracuse, N.Y. (Roger Scott, of counsel), for plaintiff.

Hancock & Estabrook, Syracuse, N.Y. (David E. Peebles, of counsel), for defendants.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### I. *Introduction*

The plaintiff, Giles Wanamaker, has filed a second amended complaint by leave of the court in which he alleges that he was

terminated from his employment by the defendants in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), and the New York State Human Rights Law, N.Y.Exec.Law § 290 et seq. ("HRL"). Plaintiff also alleges that the defendants violated sections of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 ("RICO"), by deceiving the Equal Employment Opportunity Commission ("EEOC") and other federal and state authorities, undermining federal and state laws designed to protect the public interest, and illegally causing the forced termination and/or early retirement of, and retaliation against, several employees in a class protected by the ADEA and HRL, through a pattern of racketeering activity. Plaintiff further alleges pendent state-law claims based in breach of contract, inducement of breach of contract, and intentional infliction of emotional distress.

The defendants move for dismissal of all the claims in the complaint, except the ADEA claim against the defendant Columbian Rope Company. In addition, the defendants move for reconsideration of this court's prior decision that plaintiff's filing of an administrative complaint with the EEOC but not with the New York State Division of Human Rights ("NYSDHR") constituted compliance with the administrative filing requirements of the ADEA, but was not an election of remedies under the HRL. In the alternative, defendants move for certification of the administrative filing question for interlocutory appeal to the Second Circuit Court of Appeals. Defendants also urge the court to decline to exercise pendent jurisdiction over plaintiff's state HRL claim if the court does not reverse its prior decision on the issue. The court heard oral argument on these motions on May 22, 1990.

## II. *Background*

The factual background for this proceeding is gleaned from the complaint:

In April 1973, the plaintiff, a practicing attorney in New York City, was contacted by a personnel search agent who informed him of a "career position" as in-house counsel available at the defendant Columbian Rope Company ("CRC") in Auburn, New York. In May 1973, the plaintiff met with Paul George, then a member of CRC's board of directors and CRC's legal counsel, to discuss the position. According to the complaint, George, who is not a defendant in this action, told the plaintiff that the person in the new position would perform George's functions upon his retirement the following year, and would eventually become general counsel and secretary to CRC. Over the next several months, the plaintiff met or spoke with several representatives from CRC, including the president and other officers and directors, to discuss the position. Plaintiff alleges that he repeatedly informed the CRC representatives that it was important to him that he obtain a permanent "career position," and that they assured him it would be. On or about February 19, 1974, plaintiff was formally offered the position by then-president of CRC, Legare Hole. None of the terms or conditions of plaintiff's employment were put in writing, except for a job description, and an agreement that CRC would provide six months salary to the plaintiff if he was terminated for cause. Plaintiff alleges, however, that among the conditions orally agreed to was that his employment was a "permanent career position" that could be terminated only for cause. None of the CRC representatives whom plaintiff alleges he met or spoke with during this time, including Hole, are named as defendants in this action.

Plaintiff began his employment at CRC as "corporate counsel" on or about March 1, 1974. Approximately two months later, plaintiff was elected assistant secretary and then secretary and general counsel for CRC, positions he held until his termination. In July 1982, plaintiff, in his role as general counsel, interviewed defendant Richard W. Cook, a partner at the law firm Hancock and Estabrook, also a defendant in this action, as possible outside counsel should CRC, which was experiencing financial difficulties at that time, seek relief and/or reorganization under the Bankruptcy Code. In August 1982, CRC retained

Cook as outside counsel upon plaintiff's recommendation.

Some time in 1984, Cook began performing personal legal work for the president of CRC, defendant George R. Metcalf, in addition to Cook's duties as CRC's outside bankruptcy counsel. Then on or about January 16, 1985, Cook was named as a member of CRC's board of directors, despite a legal memorandum circulated by the plaintiff recommending against electing Cook a director because of an appearance, in the plaintiff's opinion, of a conflict of interest. About this time, according to the plaintiff, began a scheme orchestrated by the defendants to terminate him unlawfully because of his age.

Plaintiff alleges that directors and officers, including defendants George Metcalf, D. Barton Chapman, Tristan E. Beplat, Robert W. Seidler, and S. Warren Metcalf, frequently spoke of the need for "new blood" and "young blood" within CRC and its subsidiaries. Plaintiff also alleges that during the period from 1982 to 1986, employees protected by the ADEA (over 40 years of age) were the subject of more than 80 percent of the "forced early retirements or abolished positions" at CRC.[1] During the years 1985 and 1986, plaintiff claims, defendant Cook and other partners in defendant Hancock and Estabrook engaged in repeated criticism of him with respect to his age, professional competence, and management of outside litigation.

In telephone conversations during the month of October 1986 with other CRC officers and directors, including defendants Beplat, Chapman, and George Metcalf, defendant Cook proposed that he assume all of plaintiff's duties as counsel and secretary at CRC, with the option of redelegating some of the legal work to other partners at defendant Hancock and Estabrook. Ultimately, all of CRC's directors conducted an informal breakfast meeting on the morning of October 30, 1986, at which they decided to terminate the plaintiff's employment as of June 30, 1987, and turn over all corporate legal matters to defendant Cook. At that time, Cook was 37 years of age. By January 1987, Cook had resigned as a director of CRC, but had assumed many of plaintiff's legal functions.

On or about March 2, 1987, plaintiff presented a memorandum to the board of directors, requesting a review of the decision to terminate him, and pointing out that he believed that by terminating him and replacing him with a younger person (Cook), they were in violation of the ADEA and HRL. At a regularly scheduled board meeting on March 5, 1987, attended by the plaintiff and defendants George Metcalf, Chapman, Stephen G. Ludt, Beplat, Seidler and Cook, plaintiff again requested reconsideration of the decision to terminate him. The directors also questioned plaintiff about whether he intended to pursue legal remedies for his termination, and implied that forbearance from legal recourse might be a condition of relief or other benefits. Plaintiff's answers to those questions are not apparent in the complaint. Nevertheless, following the conclusion of the meeting, plaintiff was handed a memorandum drafted by defendant Cook and signed by defendant George Metcalf terminating plaintiff immediately and instructing him to vacate his office. Plaintiff was paid his regular salary through the end of June 1987.

Plaintiff filed an administrative claim with the EEOC on or about August 26, 1987, alleging discrimination on the basis of age, and retaliation. Plaintiff typed the following request at the top of the charge form:

Please do not file with the NYS Div. of Human Rights per discussions 8/24/87.

On or about September 3, 1987, a copy of the charge form was stamped as received from the EEOC by the NYSDHR. At the time plaintiff filed his charge, a "worksharing agreement" was in effect between the EEOC and the NYSDHR, which provided in part that:

EEOC will refer to the FEP agency [NYSDHR] copies of all ADEA co-juris-

---

1. The prohibitions against age discrimination in the ADEA apply to individuals who are at least 40 years of age but less than 70 years of age. 29 U.S.C. § 631.

dictional charges (verified complaints) received by EEOC. Such referrals will be made in order to protect the private action rights of charging parties under ADEA and accepted by the FEP agency [NYSDHR] as a verified complaint. The FEP agency [NYSDHR] will notify complainant in writing that the investigation of the complaint will be made by the EEOC and the FEP agency [NYSDHR] will base its determination on the facts elicited by the EEOC.

The EEOC's regional director issued a determination on October 28, 1988, that the evidence did not establish that plaintiff's discharge was a violation of the ADEA, but that plaintiff's removal from his positions in March 1987 did constitute retaliation. The determination was upheld by the EEOC on appeal. Efforts were apparently made by the EEOC to settle the retaliation charge, which proved unsuccessful. The EEOC has closed its file in the matter.

The plaintiff subsequently commenced an action in this court against CRC, George Metcalf, and Cook, alleging, *inter alia*, that his employment was terminated in violation of the ADEA and the HRL. Those defendants subsequently moved to dismiss plaintiff's claims on a number of grounds, pursuant to Fed.R.Civ.P. 12(b)(6). This court issued a comprehensive memorandum-decision and order dated May 17, 1989, ruling upon the various aspects of defendants' motion. The court dismissed the claims against defendants Metcalf and Cook, leaving CRC as the only defendant. The court denied defendants' motion to dismiss plaintiff's ADEA claims for failure to commence administrative proceedings with the NYSDHR, as required under the ADEA. The court found that the forwarding by the EEOC to the NYSDHR of plaintiff's complaint constituted commencement of a state administrative proceeding for the purposes of the ADEA administrative filing requirements, but did not constitute a filing for the purposes of the election of remedy provisions of the HRL, under which the complainant is required to choose at the outset whether to commence an administrative proceeding or to bring an action in a court of competent jurisdiction

claiming a violation of the HRL. If a complainant files an administrative complaint with the NYSDHR, he or she can then commence a court action only if the complaint is dismissed by the NYSDHR for "administrative convenience." N.Y. Exec.Law § 297(9).

On October 26, 1989, the NYSDHR issued a determination dismissing plaintiff's charge on the ground of administrative convenience. Defendant CRC then commenced a special proceeding in New York State Supreme Court pursuant to N.Y. Exec.Law § 298 challenging the dismissal and requesting that the matter be remanded to the NYSDHR for further investigation and determination. CRC contended that it is impermissible for the NYSDHR to dismiss a charge for administrative convenience when the sole basis is to allow the complainant to prosecute a federal court action that has already been commenced. CRC's petition was dismissed by the New York State Supreme Court by order dated April 11, 1990.

Plaintiff has now submitted to this court a corrected second amended complaint by leave of the court granted December 12, 1989. The complaint names as defendants CRC, and the following individuals and entities: George R. Metcalf, Richard W. Cook, D. Barton Chapman, Tristan E. Beplat, Robert W. Seidler, Stephen G. Ludt, S. Warren Metcalf, and the law firm of Hancock and Estabrook. The complaint asserts eight separate causes of action, as follow: (1) a claim of willful violation of the ADEA and the HRL based upon plaintiff's loss of employment; (2) a claim of retaliation, based upon CRC's removal of plaintiff from his positions in March 1987, in violation of the ADEA and HRL; (3) a claim for breach of an alleged oral contract between plaintiff and CRC for a permanent career position from which the plaintiff could only be removed for cause; (4) a claim against defendants George Metcalf, Cook and Hancock and Estabrook for allegedly inducing the breach of plaintiff's employment contract; (5) a claim for intentional infliction of emotional distress; (6) a claim under RICO, alleging a violation of 18 U.S.C.

§ 1962(b); a RICO claim alleging a violation of 18 U.S.C. § 1962(c); and a RICO claim alleging a violation of 18 U.S.C. § 1962(d).

The defendants move for dismissal of all of the above claims with the exception of the ADEA claim against CRC. The defendants also seek reconsideration of the court's previous determination that plaintiff's filing with the EEOC met the administrative filing requirements of the ADEA, but did not constitute an election of remedies that would preclude the plaintiff from pursuing his HRL claims in court. In the alternative, defendants move for certification of the following question for interlocutory review by the Second Circuit:

Does the filing of an administrative complaint with the Equal Employment Opportunity Commission (EEOC) in New York, which is a deferral state, with a specific request to the EEOC not to file the charge with the New York State Division of Human Rights (NYSDHR) where the charge is forwarded by the EEOC to that state agency pursuant to a worksharing agreement but not acted upon in any fashion, satisfy the administrative filing requirements of the Age Discrimination in Employment Act (ADEA) and yet not constitute a filing with the NYSDHR for the purposes of the election of remedies pursuant to the N.Y. Human Rights Law?

The defendants also urge the court not to exercise pendent jurisdiction over plaintiff's HRL claims if the court decides not to reverse its prior decision. These arguments will be addressed by the court *seriatim*.

### III. *Discussion*

#### A. Motion to Dismiss

▮▮▮▮ The standards for considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) are well-settled. The motion is addressed to the face of the complaint, and the court must construe the complaint's allegations in the light most favorable to the plaintiff and accept the well-pleaded allegations as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A claim will be dismissed under Rule 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts supporting his legal claim which will entitle him to relief. *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985).

#### B. ADEA and HRL Claims

In plaintiff's original complaint, he named CRC, George Metcalf, and Cook as defendants. This court, in its May 17, 1989 memorandum-decision and order, dismissed the complaint as to Metcalf and Cook on the ground that the complaint did not contain sufficient allegations to support a finding that Metcalf and Cook were "employers" who could be liable under the ADEA. *See Wanamaker v. Columbian Rope Co.,* 713 F.Supp. 533, 543–44 (N.D.N.Y.1989). The issue of defendants' liability as employers under the HRL was not before the court and was not decided at that time.

In plaintiff's corrected second amended complaint (hereinafter "complaint") now before the court, the plaintiff names the three original defendants—CRC, Metcalf and Cook—as well as several other members of CRC's board of directors and the law firm Hancock and Estabrook. The plaintiff alleges in Count 1 of the complaint that all of the named defendants violated the ADEA and HRL through their "knowing, reckless and willful disregard of the statutory proscriptions" against age discrimination contained therein.[2] The defen-

---

**2.** Title 29 U.S.C. § 623 makes it unlawful for an employer to:

fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age....

29 U.S.C. § 623(a)(1).

Section 296 of the Human Rights Law makes it an unlawful discriminatory practice for an employer or licensing agency:

because an individual is between the ages of eighteen and sixty-five, to refuse to hire or employ or license or to bar or to terminate from employment such individual, or to discriminate against such individual in pro-

dants maintain that none of them, save CRC, is an employer who may be liable under either the ADEA or the HRL. Therefore, defendants argue, Count 1 of the complaint should be dismissed as to all of the defendants except CRC for failure to state a claim upon which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

Only an "employer," "employment agency," or "labor organization" may be liable under the ADEA. 29 U.S.C. § 623(a)(c). The ADEA defines "employer" as "a person engaged in an industry affecting commerce who has twenty or more employees ..." 29 U.S.C. § 630(b). The term also means "any agent of such a person...." 29 U.S.C. § 630(b)(1). Thus, an employer or an agent of an employer may be held liable under the ADEA for age discrimination.

There are few cases on the standards for determining whether a defendant is an "employer" within the meaning of the ADEA, so the court relies as well on Title VII and Fair Labor Standards Act ("FLSA") caselaw. The Second Circuit has approved the application of Title VII principles to ADEA cases since " 'the substantive prohibitions of the ADEA were derived *in haec verba* from Title VII.' " *Lowe v. Commack UFSD*, 886 F.2d 1364 (1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990) (quoting *Lorillard v. Pons*, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978)). In addition, the ADEA explicitly incorporates the remedies and procedures of the FLSA. 29 U.S.C. § 626(b); *House v. Cannon Mills Co.*, 713 F.Supp. 159, 160 (M.D.N.C.1988).

Prefatorily, the term "employer" is to be liberally interpreted. *Bostick v. Rappleyea*, 629 F.Supp. 1328, 1334 (N.D.N.Y.1985) (citing *Rivas v. State Bd. for Community Colleges and Occupational Educ.*, 517 F.Supp. 467, 470 (D.Colo.1981)). The term " 'has been construed in a functional sense to encompass persons who are not employers in conventional terms, but who nevertheless control some aspect of an individual's compensation, terms, conditions, or

motion, compensation or in terms, conditions or privileges of employment.

privileges of employment.' " *Bostick*, 629 F.Supp. at 1334 (quoting *Spirt v. Teachers Ins. and Annuity Assoc.*, 475 F.Supp. 1298, 1308 (S.D.N.Y.1979), *aff'd in part and rev'd in part on other grounds*, 691 F.2d 1054 (2d Cir.1982), *cert. denied sub nom. Teachers Ins. and Annuity Assoc. v. Spirt*, 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984)). A person is an agent of an employer " 'if he participated in the decision making process that forms the basis of the discrimination.' " *Bostick*, 629 F.Supp. at 1334 (quoting *Jones v. Metropolitan Denver Sewage Disposal Dist. No. 1*, 537 F.Supp. 966, 970 (D.Colo.1982)).

The definition of an "employer" under the HRL, found in N.Y.Exec.Law § 296(5), relates only to the number of persons employed "and provides no clue to whether individual employees of a corporate employer may be sued under its provisions." *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 543, 483 N.Y.S.2d 659, 660, 473 N.E.2d 11, 12 (1984). The Court of Appeals held in *Patrowich*, however, that a corporate employee, even though he may be an officer and supervisor of a corporate division, "is not individually subject to suit under New York's Human Rights Law ... if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Id.* at 542, 483 N.Y.S.2d at 660, 473 N.E.2d at 12.

In the instant case, the plaintiff alleges that on October 30, 1986, defendant Cook met with defendant Metcalf in Cook's office, and that the two discussed plaintiff's termination. Complaint, para. 45. Plaintiff alleges in the same paragraph that Cook spoke on the telephone on October 15 and October 17, 1986 with defendants Beplat, Chapman and Metcalf and suggested that he assume all of the plaintiff's legal and secretarial duties. Plaintiff further alleges that all of the CRC directors conducted an "informal, unrecorded" meeting on the morning of October 30, 1986, at which defendant Cook proposed that he assume all of the plaintiff's functions as counsel and secretary. Complaint, para. 46. Plain-

N.Y. Human Rights Law § 296[3–a](a).

tiff avers that on October 31, 1986, defendants Metcalf and Ludt informed him that the board of directors decided at the "informal" meeting conducted the previous day to terminate him from his employment effective June 30, 1987. Complaint, para. 48. Plaintiff further alleges that, after he sent the March 2, 1987, memorandum to the board of directors requesting reconsideration of their decision to terminate his employment, he was invited to a meeting of the board on March 5, 1987, at which defendants Metcalf, Chapman, Ludt, Beplat, Seidler and Cook were present. Cook had earlier resigned as a director, a fact unknown at that time to the plaintiff, but was present in his role as general counsel and secretary. Complaint, para. 51–52. The board of directors voted to terminate plaintiff immediately, and following the meeting, plaintiff was handed a memo drafted by Cook and signed by George Metcalf informing him that he was terminated and should vacate his office at once. Complaint, para. 55.

■ The defendants do not dispute that CRC is a proper party defendant on the ADEA claims. However, at oral argument, counsel for the defendants, relying on *Spirt* and *Bostick*, contended that the individual defendants could not be liable because as officers and/or directors of CRC, they did not have the necessary control over plaintiff's employment. Defendants' counsel also implied that the individual defendants should be shielded from individual liability because of their status as corporate officers and directors. However, corporate officers and directors may be individually liable for violations of the ADEA if they exercise control over an employee. *House v. Cannon Mills Co.*, 713 F.Supp. 159, 161 (M.D.N.C.1988). In *Shultz v. Chalk–Fitzgerald Const. Co.*, 309 F.Supp. 1255 (D.Mass.1970), the court held an individual liable as an "employer" under the FLSA despite the fact that he acted in a representative capacity as an officer and agent of a corporation. As the court stated:

> Congress has in effect provided that for the purposes of the Act any person who acts directly or indirectly in the interest of an employer in relation to an employee shall be subject to the same liability as the employer.... [L]iability is predicated not on the existence of the employer-employee relationship between him and the employee *but on the acts he performs in relation to the employee.*

*Id.* at 1257 (emphasis added); *see also Donovan v. Maxim Indus., Inc.*, 552 F.Supp. 1024, 1025 (D.Mass.1982) (the "corporate form does not shield from individual liability for violations of [the FLSA] those officers who act for the corporation in relation to its employees.")

■ An application of these same principles to an ADEA case is consistent with the ADEA's purpose to eliminate age-based discrimination from the workplace, and with the liberal construction to be given to the ADEA's remedial provisions. *Cannon Mills*, 713 F.Supp. at 162; *see also Bostick*, 629 F.Supp. at 1334.

■ The plaintiff here alleges that all of the individual defendants took part in the initial decision to terminate him, or in the language of *Bostick*, that they "participated in the decision making process that forms the basis of the discrimination." Plaintiff thus states a claim under Section 623 of the ADEA as to the individual defendants.

■ With respect to plaintiff's HRL claims, defendants urge the court to apply the holding in *Patrowich* and dismiss the claims. Defendants argue that they had no ownership interest or power to do more than carry out personnel decisions made by others. On the contrary, plaintiff alleges that all of the directors had the power to and did vote to terminate him. *See Lapidus v. New York City Chapter of New York State Ass'n for Retarded Children, Inc.*, 118 A.D.2d 122, 504 N.Y.S.2d 629, 634 (1st Dept.1986) (distinguishes *Patrowich*, noting that defendant in *Lapidus* had power to hire and fire, and that plaintiff alleged defendant had made comments over several years disparaging older employees).

Moreover, Section 296(6) of the HRL states that it shall be an unlawful discriminatory practice "for any person to aid,

abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y.Exec.Law § 296(6). Even if the defendants were not corporate agents of CRC, plaintiff's allegations support the conclusion that defendants aided or abetted the acts which plaintiff claims violated the HRL. Thus, defendants' motion to dismiss plaintiff's HRL claim on this ground is denied.

■ Plaintiff does not allege, however, that defendant Warren Metcalf took part in the decision to terminate plaintiff immediately on March 5, 1987, and thus the retaliation claim against Warren Metcalf in Count 2 must be dismissed. Further, Hancock and Estabrook does not fall within the definition of an agent or employer under either the ADEA or the HRL, and Counts 1 and 2 of the complaint are therefore dismissed as to Hancock and Estabrook.

## C. Breach of Employment Contract

■ Plaintiff alleges in Count 3 of the complaint that the defendants breached an enforceable oral agreement with CRC to employ plaintiff for the duration of his career, terminable only for just cause. Plaintiff claims that the defendants breached that contract by voting to terminate him without just cause. The defendants argue that the alleged contract is unenforceable because it is within the New York Statute of Frauds, which states, in pertinent part:

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking ... [b]y its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime....

N.Y.Gen.Oblig.Law § 5–701(a)(1).

The guiding principles applicable to this section as it pertains to employment contracts were given their most thorough recent treatment by the New York Court of Appeals in *D & N Boening, Inc. v. Kirsch Beverages, Inc.*, 63 N.Y.2d 449, 483 N.Y. S.2d 164, 472 N.E.2d 992 (1984), in which the court noted the traditionally narrow interpretation of the one-year provision of the Statute of Frauds by the New York courts to bar the enforcement of oral employment agreements "only which by their very terms have absolutely no possibility in fact and law of full performance within one year." *Id.* at 454, 483 N.Y.S.2d at 165, 472 N.E.2d at 993. In other words, the court must analyze the oral agreement to determine if:

> according to the parties' terms, there might be any possible means of performance within one year. Wherever an agreement has been found to be susceptible of fulfillment within that time, in whatever manner and however impractical, this court has held the one-year provision of the Statute to be inapplicable, a writing unnecessary, and the agreement not barred. [citations omitted]

*Id.* at 455, 483 N.Y.S.2d at 166, 472 N.E.2d at 994.

On the other hand, there are oral agreements which are, by their very terms, incapable of completion within one year and therefore unenforceable. *Id.* at 456, 483 N.Y.S.2d at 166–67, 472 N.E.2d at 994–95. Among these agreements are those which are terminable within one year only upon a breach by one of the parties, since a breach " 'is not performance, but rather destruction of the contract....' " *Id.* at 457, 483 N.Y.S.2d at 167, 472 N.E.2d at 995 (quoting *Blake v. Voigt*, 134 N.Y. 69, 72, 31 N.E. 256 (1892)). However, where one or both parties have an explicit option to terminate their agreement within one year, "that agreement is, by its own terms, capable of completion within that period and is not governed by the Statute." *D & N Boening*, 63 N.Y.2d at 456, 483 N.Y.S.2d at 167, 472 N.E.2d at 995.

In the instant case, the plaintiff alleges that CRC representatives promised him, on several occasions, a "permanent career position" at CRC which could be terminated only for just cause. Thus, by the terms of the agreement alleged by the plaintiff, CRC had an explicit option to terminate the agreement which could have been exercised

within one year. *See, e.g., Weiner v. McGraw–Hill, Inc.,* 57 N.Y.2d 458, 462, 457 N.Y.S.2d 193, 443 N.E.2d 441 (1982) (agreement enforceable where employment terminable for any just and sufficient cause wherever dismissal deemed necessary for the welfare of the company).[3] Thus, the alleged employment agreement is not barred by the one-year provision of the Statute of Frauds.

The question remains, however, whether the individual defendants are liable for the alleged breach of the employment contract. A corporate officer "is not personally liable for causing the corporation to terminate an employment contract 'unless his activity involves individual separate tortious acts.' " *Robbins v. Panitz,* 61 N.Y.2d 967, 969, 475 N.Y.S.2d 274, 275, 463 N.E.2d 615, 616 (1984) (quoting *A.S. Rampell, Inc. v. Hyster Co.,* 3 N.Y.2d 369, 378, 165 N.Y.S.2d 475, 144 N.E.2d 371 (1957)). The complaint here, although it refers to some of the actions of the individual defendants with respect to plaintiff's termination as "fraudulent," *see, e.g.,* Complaint, para. 45, 47, does not state with the requisite particularity the alleged fraudulent statements or actions. *See* Section III. F., *infra.* Plaintiff also alleges in Count 5 of the complaint the intentional infliction of emotional distress by the defendants, but as will be discussed below, his allegations fall far short of stating the elements of that cause of action. The substance of plaintiff's allegations is that the defendants discussed terminating him on the basis of his age, and ultimately met and voted to remove him on the basis of his age. As the defendants correctly note, to the extent that the plaintiff contends that the defendants took concerted action to terminate him because of his age, such allegations are not actionable under New York law. *See Monsanto v. Electronic Data Systems Corp.,* 141 A.D.2d 514, 529 N.Y.S.2d 512,

514 (2d Dept.1988). An employment discrimination claim "is an action created by statute, which did not exist at common law, and therefore cannot give rise to tort liability." *Id.* (citing *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 297, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983)). Thus, plaintiff does not sufficiently allege separate tortious conduct on the part of the directors by which they could be held liable for breach of his alleged employment contract. Accordingly, Count 3 of the complaint is dismissed as to the individual defendants George Metcalf, Cook, Chapman, Beplat, Seidler, Ludt, and Warren Metcalf. Nor may defendant Hancock and Estabrook, a non-party to the contract and a non-agent of CRC, be held liable for an alleged breach of contract by CRC. Count 3 is dismissed as to that law firm as well.

### D. Inducement of Breach of Contract

Plaintiff alleges in Count 4 of the complaint that defendants George Metcalf, Cook and Hancock and Estabrook knowingly induced the breach of plaintiff's employment contract with CRC. The elements of a claim for inducement of breach of contract are: (1) the existence of a valid contract; (2) knowledge of that contract on the part of the defendant; (3) the intentional procurement by the defendant of the breach of contract; and (4) damages. *Poughkeepsie Sav. Bank v. R & G Sloane Mfg. Co.,* 84 A.D.2d 212, 217, 445 N.Y.S.2d 560, 564 (2d Dept.1981). The defendants rely heavily on their contention that no valid employment contract exists, and thus, defendants argue, plaintiff cannot fulfill the first essential element of the cause of action. However, the court has determined that the existence of an enforceable agreement has been pleaded, and thus defendants' argument on this ground fails. However, generally, " 'a director of a cor-

---

**3.** The Court of Appeals in *D & N Boening,* notes in a footnote that the reference in *Weiner* to an agreement terminable "for just cause" falling outside the Statute of Frauds should not be construed to include an agreement where "just cause" could only be the other party's breach. Such an agreement, according to the court in *D & N Boening,* would be within the Statute. *D & N Boening,* 63 N.Y.2d at 456 n.*, 483 N.Y.S.2d at 166 n.*, 472 N.E.2d at 994 n.*. Here, what constitutes just cause is not specified in the terms of the alleged agreement, and thus it would presumably include any number of reasons that would not necessarily be a breach of the employment agreement.

poration is not personally liable to one who has contracted with the corporation on the theory of inducing a breach of contract, merely due to the fact that, while acting for the corporation, he has made decisions and taken steps that resulted in the corporation's promise being broken.'" *Courageous Syndicate, Inc. v. People-to-People Sports Comm., Inc.*, 141 A.D.2d 599, 529 N.Y.S.2d 520, 521 (2d Dept.1988) (quoting *Murtha v. Yonkers Child Care Ass'n*, 45 N.Y.2d 913, 915, 411 N.Y.S.2d 219, 383 N.E.2d 865 (1978), *on remand* 69 A.D.2d 813, 415 N.Y.S.2d 52 (1979)). Moreover, " '[a] corporate officer who is charged with inducing the breach of a contract between the corporation and a third party is immune from liability if it appears that he is acting in good faith ... [and did not commit] independent torts or predatory acts directed at another.'" *Courageous Syndicate*, 141 A.D.2d at 600, 529 N.Y.S.2d at 521 (quoting *Murtha*, 45 N.Y.2d at 915, 411 N.Y.S.2d 219, 383 N.E.2d 865). As discussed in the section above, plaintiff has not sufficiently alleged that the individual defendants committed tortious acts independent of the statutory employment discrimination claim. *See Robbins v. Panitz*, 61 N.Y.2d at 969, 475 N.Y.S.2d at 274, 463 N.E.2d at 615; *Monsanto*, 141 A.D.2d 514, 529 N.Y.S.2d at 514. With respect to the claim against defendant Hancock and Estabrook, plaintiff makes no argument and no allegations, save a bare conclusory statement in paragraph 66 of the complaint that Hancock "knowingly induced the breach of Plaintiff's contract with Columbian," that would support such a claim. Accordingly, Count 4 of the complaint is dismissed in its entirety.

### E. Intentional Infliction of Emotional Distress

■ In Count 5 of the complaint, plaintiff alleges the intentional infliction of emotional distress by the defendants. Plaintiff avers that, "[i]n the period prior to and subsequent to his unjust firing, [he] was humiliated and aggravated through public and private actions, conduct, criticism and rudeness as well as loss of income, financial well-being and employment by Defen-

dants." Complaint, para. 69. Plaintiff also alleges that, "[b]y harassing Plaintiff and taking away the sole source of income for Plaintiff and his family, Defendants intentionally inflicted mental anguish, emotional distress, humiliation, loss of reputation and self-respect, loss of employment, financial distress, professional detriment, pain and suffering and irreparable injury." Complaint, para. 71. The defendants maintain that these allegations are essentially similar to those in the plaintiff's IIED claim in the previous complaint, which were dismissed by this court. *Wanamaker*, 713 F.Supp. at 545–46. The court's previous disposition, defendants contend, is the "law of the case," and should not be reconsidered.

Without addressing the "law of the case" argument, the court nevertheless dismisses plaintiff's IIED claim. As previously noted by this court, IIED claims are subject to a strict legal standard. Defendants' conduct must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Wanamaker*, 713 F.Supp. at 545 (quoting *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985)); *see also Realmuto v. Yellow Freight System, Inc.*, 712 F.Supp. 287, 289 (E.D.N.Y.1989). For example, in *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983), the plaintiff alleged, among other things, that he was demoted for reporting fraud at his company; informed he would never advance because of his age; discharged; ordered to leave immediately; and forcibly and publicly escorted from the workplace by company guards. The Court of Appeals held that these allegations fell "far short" of the standard for an IIED cause of action. *Murphy*, 58 N.Y.2d 293, 461 N.Y.S.2d at 236, 448 N.E.2d at 90. Plaintiff's allegations in this case similarly fall short of stating an IIED claim.

### F. RICO Claims

Plaintiff also alleges violations of sections of the federal RICO statute in Counts

6 through 8 of the complaint.[4] Among the essential elements of a claim for damages under any of the sections of RICO are the commission by the defendants of two or more "predicate acts," 18 U.S.C. § 1961(1), constituting a "pattern of racketeering activity."[5] 18 U.S.C. §§ 1961(5), 1962, 1964(a), 1964(c). *See Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 51 (2d Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650, *reh'g denied,* 485 U.S. 1030, 108 S.Ct. 1588, 99 L.Ed.2d 903 (1988); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); *Anitora Travel, Inc. v. Lapian,* 677 F.Supp. 209 (S.D.N.Y.1988). The offenses which underlie "racketeering activity" are the predicate acts necessary for a RICO violation. They are defined in 18 U.S.C. § 1961(1) as acts "indictable" or "punishable" under various federal criminal statutes and acts "chargeable" under certain state criminal laws, including murder, kidnapping, arson, robbery, bribery, extortion, dealing in narcotics, securities fraud, mail fraud and wire fraud. *See Equitable Life Assurance Soc'y v. Alexander Grant & Co.*, 627 F.Supp. 1023, 1027 (S.D.N.Y.1985). Civil litigation under RICO typically involves allegations of mail fraud, 18 U.S.C. § 1341,[6] and wire fraud, 18 U.S.C. § 1343.[7] *Id.* Viewed in the light most favorable to the plaintiff, the complaint avers that the defendants used the United States mails and made telephone calls in executing or attempting to execute a fraudulent scheme to discriminate against employees protected by the ADEA, thus committing mail and wire fraud. Because plaintiff fails to plead fraud with the specificity required by Fed.R.Civ.P. 9(b), the RICO claims must be dismissed.

 Where mail and/or wire fraud violations are treated by the plaintiff as the "predicate acts" constituting a pattern of racketeering activity, those fraud allegations must be pleaded with the specificity

---

**4.** The cause of action in Count 6 is based on 18 U.S.C. § 1962(b), which makes it unlawful for any person "through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." In Count 7, plaintiff alleges defendants violated 18 U.S.C. § 1962(c), which makes it unlawful for any person "employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." Count 8 alleges a conspiracy to violate Sections 1962(b) and 1962(c), pursuant to 18 U.S.C. § 1962(d).

**5.** A plaintiff seeking to bring a civil RICO action must allege all of these following essential elements:
 (1) "that the defendant [a 'person' in terms of the Act]
 (2) through the commission of two or more acts;
 (3) constituting a 'pattern'
 (4) of 'racketeering activity'
 (5) directly or indirectly invests in, or maintains an interest in, or participates in
 (6) an 'enterprise'
 (7) the activities of which affect interstate commerce or foreign commerce."
 (8) And "that the plaintiff was injured in his business or property 'by reason of' the aforementioned activity of the defendant."

*Equitable Life Assurance Soc'y v. Alexander Grant & Co.,* 627 F.Supp. 1023, 1026 (S.D.N.Y. 1985) (quoting *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984)).

**6.** Title 18 U.S.C. § 1341, titled "Frauds and swindles," provides, in pertinent part:
 Whoever, having devised or intending to devise any scheme or artifice to defraud ... for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

**7.** Title 18 U.S.C. § 1343, title "Fraud by wire, radio, or television," states, in applicable part:
 Whoever, having devised or intending to devise any scheme or artifice to defraud ... transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

required by Fed.R.Civ.P. 9(b). *Anitora Travel,* 677 F.Supp. at 214; *see also Beck,* 820 F.2d at 49–51. Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Mail and wire fraud pleadings, in order to satisfy Rule 9(b), must specify: " 'precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and person responsible for making (or, in the case of omissions, not making) the same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants "obtained as a consequence of the fraud." (citation omitted).' " *Equitable Life Assurance Soc'y v. Alexander Grant & Co.,* 627 F.Supp. 1023 (S.D.N.Y.1985) (quoting *Conan Properties, Inc. v. Mattel, Inc.,* 619 F.Supp. 1167 (S.D.N.Y. 1985)); *see also Anitora Travel,* 677 F.Supp. at 214. In addition, mail and wire fraud claims require a showing of *intentional fraud. Beck,* 820 F.2d at 49 (citing *United States v. Von Barta,* 635 F.2d 999, 1005 n. 14 (2d Cir.1980), *cert. denied,* 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981)); *A. Burton White, M.D. v. Beer,* 679 F.Supp. 207, 211 (E.D.N.Y.1988). Although Rule 9(b) provides that intent and "other condition of mind" may be averred generally, plaintiffs must nonetheless provide "some factual basis for conclusory allegations of intent." *Beck,* 820 F.2d at 50. These factual inferences "must give rise to a 'strong inference' that the defendants possessed the requisite fraudulent intent." *Id.*

■ With respect to fraud on the part of the defendants, plaintiff here alleges that during the years 1985 and 1986, defendant Cook, "certain partners in Hancock, and certain of the Directors" repeatedly criticized him, "such criticism falsely and fraudulently centering on, but not limited to, Plaintiff's age, professional competence [sic], and management of outside litigation...." Complaint, para. 41. Plaintiff alleges that the "false and fraudulent statements" noted in paragraph 40 (the court presumes plaintiff intended to refer

to paragraph 41, since there are no allegations of statements by the defendants in paragraph 40) were made during "extensive telephone calls between and among the defendants and at meetings of the enterprises convened by the said Directors by notices sent in the United States Mail...." Complaint, para. 43. Plaintiff then lists the dates of 22 "notices" from CRC to the directors, and one "notice" from CRC and Metcalf to the directors, which are presumably notices of meetings of the board of directors, since the dates of meetings accompany the dates of the notices. Plaintiff also includes a notation of "Various Phone" notices without dates from CRC to the directors, although the dates of meetings accompany that notation. Complaint, para. 43. Plaintiff further alleges that:

in the aforementioned notices and meetings, Defendants, on a regular and continuing basis, fraudulently used reports forwarded through the United States Mail and compiled by interstate telephonic services to approve and direct the termination of employees, including Plaintiff herein. As a result of this fraudulent conspiracy to violate the ADEA, the NYSHRL and other anti-discrimination laws, of the approximately 29 salaried individuals who were involuntarily terminated or forced to take early retirement from CRC and/or its subsidiaries between 1982 and 1987, over eighty percent (80%), including Plaintiff, were in the protected class of the ADEA and the NYSHRL (i.e., over forty years of age).

Complaint, para. 44.

Plaintiff also avers that:

Cook, despite his knowledge of the inducements and terms of Plaintiff's employment agreement, fraudulently used his office personally and in conspiracy with his client, Metcalf, and his partnership enterprise, Hancock to propose, discuss and advocate Plaintiff's termination as General Counsel and Secretary of Columbian in the course of conversation with other Directors, including but not limited to telephone conversations on or about October 15 and 17, 1986 with Beplat, Chapman and Metcalf, fraudulently suggesting that he (Cook) assume all of

Plaintiff's legal and secretarial duties for Columbian with the option of redelegation by Cook of some of the legal work to other partners in the Hancock enterprise. Complaint, para. 45.

Plaintiff then alleges that all of the directors met informally on October 30, 1987, and decided to terminate him. Complaint, para. 46–48.

Under the four-part test enumerated in *Equitable Life* and *Conan,* the plaintiff has failed to sufficiently allege fraud on the part of the defendants to support his mail and wire fraud claims. Plaintiff satisfies the first prong, since some of his allegations identify allegedly fraudulent statements made by the defendants and the documents or conversations in which they were made. Plaintiff alleges that defendant Cook, in telephone conversations on October 15 and 17, 1986, suggested to defendants Beplat, Chapman and Metcalf that he could assume all of the plaintiff's duties at CRC. In addition, plaintiff alleges that at the informal meeting on October 30, 1986, during which the directors allegedly decided to terminate plaintiff, Cook informed the directors that he could assume plaintiff's duties. Other allegations made by the plaintiff do not satisfy the first part of the *Conan* test. Plaintiff alleges that Cook and other directors engaged in "repeated" criticism of him during the years 1985 and 1986. He lists 23 written notices and their dates, but does not indicate in any way the contents of the notices, other than that they may have been notices of meetings. Plaintiff further alleges that "Defendants, on a regular and continuing basis, fraudulently used reports forwarded through the United States Mail and compiled by interstate telephonic services to approve and direct the termination of employees ..."

Plaintiff has also met the second requirement of the *Conan* test, that the time, place, and person making the allegedly fraudulent statement is identified, at least with respect to those allegations discussed above which satisfy the first part of the test.

However, plaintiff wholly fails under the third requirement, that the content of the statements and *the manner in which they misled the plaintiff* be averred. The elements of a common law fraud claim are (1) *a material, false representation;* (2) an intent to defraud thereby; (3) *reasonable reliance on the representation;* and (4) damage to the plaintiff. *Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966 (2d Cir.1987). While plaintiff might ultimately prove back-room dealings which resulted in his unlawful termination, he nowhere alleges that he was misled in any way by the defendants, or that he relied on any representations made by the defendants. These are essential elements to a fraud claim. Even if the court were to consider plaintiff's allegation that he was fraudulently induced to enter into his employment contract, none of the persons plaintiff alleges were involved in hiring him or discussing his contract are defendants in this action. Nor does the plaintiff provide a factual basis to give rise to a "strong inference" that those individuals had the requisite fraudulent intent, i.e., that they knew when they hired plaintiff in 1974 that they intended to terminate him in violation of the alleged employment contract and the age discrimination statutes twelve years later in 1986. *See Beck,* 820 F.2d at 50.

While plaintiff alleges that he was damaged by defendants' actions, thus fulfilling the fourth prong of the *Conan* test, his failure to plead the misrepresentation and reliance necessary to support his mail and wire fraud claims necessitate dismissal of his RICO claims. Although his RICO claims would likely fail on several other grounds, including his failure to allege facts which would demonstrate the "continuity" necessary for a "pattern of racketeering activity," *see H.J., Inc. v. Northwestern Bell Tel. Co.,* —— U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989), it is not necessary to address them, plaintiff having failed to surmount even the threshold requirement of alleging two or more "predicate acts" of "racketeering activity."

G. Motion for Relief From NYSDHR "Election of Remedies" Decision

The defendants, on October 31, 1989, filed a motion pursuant to Fed.R.

Civ.P. 60(b) for partial relief from the court's prior determination that plaintiff's filing of his administrative complaint with the EEOC satisfied the EEOC's administrative filing requirement but that the EEOC's automatic filing of the complaint with the NYSDHR did not constitute an election of remedies pursuant to the HRL. *See Wanamaker*, 713 F.Supp. at 546. That motion, along with a motion by the defendants for certification of that same question for interlocutory appeal to the Second Circuit, were previously adjourned and are now before the court in conjunction with the present motion to dismiss.

Important for the purposes of these motions is the NYSDHR's determination, dated October 26, 1989, dismissing plaintiff's administrative complaint on the ground of "administrative convenience." The NYSDHR stated as its reason for the dismissal that:

> [p]rocessing the complaint will not advance the State's human rights goals in as much as the matter is presently being litigated in Federal Court in which forum all the issues concerning the question of age and retaliation discrimination can be resolved.

*See* Defendants' Notice of Motion to Dismiss dated February 23, 1990, Exh. "A".

The defendants sought a reversal of the NYSDHR's dismissal in a special proceeding in New York State Supreme Court, Cayuga County. The court dismissed defendants' petition, finding, *inter alia*, that the NYSDHR had the authority to dismiss the complaint, and that its dismissal was not arbitrary or capricious. *See* Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss, Attachment "A". Counsel for the defendants stated at oral argument that the state court decision has been appealed by the defendants, making the motions for reconsideration and certification of a question for appeal moot at this time. They will not be considered by the court at this time.

### Conclusion

The court concludes as follows:

(a) The plaintiff's first cause of action is dismissed as to defendant Hancock and Estabrook and is sustained as to the remaining defendants, pursuant to Fed.R.Civ.P. 12(b)(6), upon the basis that the other defendants are "employers" or agents of the employer within the meaning of the ADEA and the HRL.

(b) The plaintiff's second cause of action is dismissed as to defendants Hancock and Estabrook and S. Warren Metcalf, and is sustained as to the remaining defendants, pursuant to Fed.R.Civ.P. 12(b)(6), upon the grounds stated in section (a).

(c) The plaintiff's third cause of action for breach of contract is dismissed as to defendants George Metcalf, Richard W. Cook, D. Barton Chapman, Tristan E. Beplat, Robert W. Seidler, Stephen G. Ludt, S. Warren Metcalf and Hancock and Estabrook, and sustained as to defendant Columbian Rope Company, pursuant to Fed.R.Civ.P. 12(b)(6), on the ground that, although plaintiff's alleged employment contract is not barred by the Statute of Frauds, plaintiff has failed to allege independent tortious conduct on the part of the individual defendants.

(d) The plaintiff's fourth cause of action for inducement of breach of contract is dismissed, pursuant to Fed.R.Civ.P. 12(b)(6).

(e) The plaintiff's fifth cause of action for intentional infliction of emotional distress is dismissed, pursuant to Fed.R. Civ.P. 12(b)(6), on the basis that plaintiff has failed to sufficiently allege the elements of this cause of action.

(f) Plaintiff's sixth, seventh and eighth causes of action for violations of RICO are dismissed, pursuant to Fed.R.Civ.P. 12(b)(6), on the ground that plaintiff has failed to state mail and wire fraud with particularity as required by Fed.R.Civ.P. 9(b).

(g) Defendants' motions for reconsideration pursuant to Fed.R.Civ.P. 60(b) and for certification of the election of remedies question for interlocutory appeal to the Second Circuit are denied as moot.

IT IS SO ORDERED.